# AMERICAN UNIVERSITY
W A S H I N G T O N ,  D C

CONFIDENTIAL

MEMORANDUM

TO:       Ivy E. Broder, Interim Provost

THRU:     Beth Muha, Executive Director of Human Resources

FROM:     Michele Mikkelsen, Chair, Staff Personnel Review Board  *Michele Mikkelsen*

DATE:     November 28, 2005

SUBJECT:  Appeal of Mr. Mohammed Isse, Termination for Cause

Mr. Mohammed Isse, Shuttle Bus Driver, Office of Transportation Services, has appealed his September 16, 2005 involuntary separation from the American University. The Staff Personnel Review Board reviewed Mr. Isse's case and voted on November 17, 2005 to recommend that you affirm Mr. Isse's termination and dismiss his appeal.

On September 16, 2005, Kevin Wyatt, Shuttle Coordinator, Office of Transportation Services, notified Mohammed Isse, Shuttle Operator, that he [Mr. Isse] was terminated for **continued safety violations**. Mr. Isse was reported as driving down Grant Avenue and making a left turn where there is no light, ultimately blocking oncoming traffic and five (5) lanes of traffic. All drivers were given specific instructions regarding the route to and from the Metro station at a meeting on July 28, 2005. They were specifically told to make the left onto Wisconsin Avenue from Albemarle Street when returning to campus. Additionally, on April 11, 2005, Mr. Wyatt issued a notice to all drivers that they were not to deviate off of the normal routes without prior approval from Mr. Wyatt, Shuttle Coordinator, or Mr. Tony Newman, Director Risk Management and Transportation Services. Mr. Isse's actions were unsafe and jeopardized the safety of passengers and those around him.

On July 26, 2005, Mr. Wyatt issued Mr. Isse a **Level II Written Warning: Careless, Reckless, or Slipshod Work** for failure to follow proper driving protocol, particularly while operating a university shuttle bus. On Monday, July 11, 2005, Mr. Isse was observed driving bus #160, entering Fletcher Gate without using turn signals and ran through the stop sign by McCabe Hall. This was witnessed by a Director who was able to identify the bus but not the driver. The driver was identified through an investigative process. It was Mr. Isse's assigned route as the driver. All other drivers were accounted for on their buses. Additionally, Mr. Newman knew that Mr. Isse was driving that bus because Mr. Isse had just purchased fuel. Mr. Newman showed the Hearing Panel members a fuel receipt with Mr. Isse's signature. The Director who had witnessed the bus entering through Fletcher Gate without using turn signals and run through the stop sign by McCabe Hall contacted Mr. Newman verbally and put the incident in writing to Mr. Newman. At the Hearing, Mr. Isse stated, "A mechanic must have taken the bus without my knowledge."

On April 8, Mr. Wyatt, issued Mr. Isse, a **Level II Warning** for dropping off passengers at unauthorized stops at the light by the Katzen Art Center (Ward Circle) and at the traffic light at New Mexico Ave. It is a safety violation to drop off or pick up passengers at non-AU stops. It was another Director who frequently rides the bus who observed Mr. Isse doing this. Mr. Newman stated, "Mr. Isse was aware as everyone that that was not allowed because it is an unsafe practice."

"Unauthorized stops" was discussed at a monthly staff meeting on March 1, 2005. At the Hearing, Mr. Isse stated, "He was not driving metro 1 on April 4, 2005."

In Mr. Isse's **opening statement**, "He [Mr. Isse] denied receiving the April 11, 2005 notice and also denied involvement in the incidents described in the April 8, 2005 and July 26, 2005 written warning letters." Mr. Isse also stated, that "He [Mr. Isse] was terminated by Mr. Wyatt in retaliation for his disclosures and complaints about racial and religious discrimination."

Mr. Isse also stated, "that the only route that he was instructed that he could not deviate from was the Metro to Law School route." Mr. Isse continued, "Mr. Wyatt issued these warning letters without consulting me first to give me the opportunity to defend myself or provide proof to the contrary. He only discussed these incidents with me after issuing the warning letters."

In Mr. Newman's **opening statement**, he stated that,

"In August 2004, I [Mr. Newman] became the Director, Transportation Services Department. I [Mr. Newman] established policies and procedures that were consistent with the University and worked with Mr. Wyatt, Shuttle Coordinator, to implemented those policies and procedures."

Mr. Newman stated that, "In each case, Mr. Isse was written up, because of a violation of University policy explicitly." Mr. Newman stated, "One of the things I promised the drivers, that I would do was that I would apply policy even handedly, equally. Mr. Isse is not the only person who has been disciplined under the University policy." Mr. Newman informed the drivers that he has given them opportunities to discuss the disciplinary action(s) with him as Mr. Isse has done and others have done.

Mr. Newman continued, "With respect to the termination at hand, when Mr. Isse was terminated the memorandum that went out and during the disciplinary process, we vetted those memoranda with Human Resources." Mr. Newman stated "that they worked in consultation with Human Resources. In each case, the incidence that led to the disciplinary warnings and termination were witnessed by outside people, outside the department, who were employees of the University. In each case it was a Director. And in each case, the complaint came to him directly. He instructed Mr. Wyatt to investigate and look into it. So [Mr. Isse] was terminated for cause."

**Staff Personnel Review Board's Conclusion**

Based upon the evidence presented by Mr. Newman and Mr. Wyatt at the Hearing, the Staff Personnel Review Board concluded that on April 4, 2005 at 11:15am, Mr. Isse was driving the Metro 1 bus; on July 26, 2005 at 7:00am that Mr. Isse was driving bus #160 entering through Fletcher Gate; and on or around September 16, Mr. Isse did deviate from the approved route from Tenley Metro stop to the AU campus. We found that his [Mr. Isse's] termination was unrelated to his complaints of racial and religious discrimination.

The Staff Personnel Review Board recommends that you affirm Mr. Isse's termination and dismiss his appeal.