IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - X

MOHAMMED ISSE,          :

Plaintiff,              :

v.                      :        Civil Action No. 06-1422(CK)

AMERICAN UNIVERSITY:
                        :

Defendant

- - - - - - - - - -X

### OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

This Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment is submitted by Mohammed Isse, pro se. As shown below, American University is not entitled to summary judgment on my claim; and as this Court will see in her utmost fairness, neither party is entitled to summary judgment since a jury must decide who is telling the truth. Frankly, your honor, in all truth, I did not file a Motion for Summary Judgment because this case is going to either be won or lost by me by whether or not you believe my story or whether you or a jury believe the story the defendant has made. I have attached my Material Facts in Dispute and affidavits at the end of this motion.

Defendant is not entitled to summary judgement on any of my claims of an ongoing violation of Title VII, 42 U.S.C. 200e, et seq. In their "argument" section, defendant claims that I am "unable to cast any meaningful doubt on the credibility of the University's stated reasons for terminating [my] employment." Defendant's Motion at page 13.

---

[1] I am not filing a Motion for Summary Judgment because I totally believe that if the jury believes me, then I will win; and if the jury believes the defendant's witnesses, then the defendant will win.

Your Honor, if you read the attached affidavits from my three witnesses, you can tell that after working at American University for 15 years -- fifteen years -- that only after September 11, 2001, when our world was changed forever, did American University suddenly start coming up with reasons for terminating me. At the same time, since September 11, my witnesses will testify I was constantly harassed about my name, and prevented/harassed about wanting to use my lunch hour for prayer.

So, in response to American University's assertion that I can produce "no credible evidence", I would respectfully suggest to Your Honor my evidence is at least just as credible as American University's evidence -- so there must be someone out there like you or a jury to decide who is telling the truth.

In fact, I am accused by American University's lawyer on page 9 of their Motion: "Mr. Isse also claimed Mr. Wyatt retaliated against him for alleged prior discrimination complaints he now admits he did not make."

That is a false statement. If you look at page 3 of my letter (Defendant's Exhibit #21) where I state I specifically "complained about this to Human Resources several times(for example: January 30, 2002 letter to Brenda Harner[2], Policy Analyst

---

[2] It is very interesting to note Brenda Harner still works for American University and her name is referenced in Defendant's Motion as a co-witness with Tanisha Jagoe to the September 15, 2005 allegation, yet the only evidence in its Motion in addition to the false Jagoe Declaration is that the Declaration of Anthony Newman, Kevin Wyatt's supervisor, is essentially he spoke to somebody who spoke to somebody. See, paragraph #16 of Newman's Declaration, Defendant's Exhibit #2. Brenda Harner's affidavit is surprising not supplied, instead Defendants choosing innuendo and an incredible witness.

and March 27, 2003 letter to Beth Muha, Execute Director, Human Resources)" actually refers to the very-first sentence of that very paragraph: "I have faced harassment and discrimination from Thomas Leathers(at that time Manager of Transportation Services) and Kevin Wyatt(Shuttle Supervisor). I feel this discrimination occurred on the basis of my national origin and religion." It did not refer, as Defendant's lawyer tries to claim, to the specific follow-up sentence about their telling me to change my muslim name or not allowing me to attend prayers. Counsel for Defendant took this completely out of context and attempted to use it in my deposition. However, if you look at my transcript at page 218-219(Defendant's Exhibit #26) I specifically answer I informed American University **verbally** of this before: "No, I tell them verbally." just like I stated on page 75-77, 111-112, 198-199 and 201 of the transcript which Defendants' attorney fails to mention in the Motion but keeps asking over and over again during the deposition.[3]  I never testified I never made any prior complaints of discrimination against Mr. Wyatt for which he retaliated against me like the University's lawyer wants you to believe.   I did make such

---

[3] I also was not clear on the question.  I answered: "What do you want to know?" given it was a confusing question like so many in the deposition.  For example, here's one question on page 257: Q: "You assume he knows that?  Was he at the turn?  Was he at the turn signal?   Does he stay at Albemarle, Grant Street, and Pennsylvania Avenue?  I am asking you, how do you know that?  What personal knowledge do you have that Wyatt knew that other people were taking that turn?" This is all one question.

Some were also inappropriate.  On page 128: "Q:Okay.  Would it be reasonable for Kevin Wyatt to conclude that you were driving that bus based upon the fact that someone reported that the bus was driving onto campus at that hour?  A: What do you mean?  Q: In your view, is it reasonable for Kevin Wyatt to conclude that you were the driver of that bus?"

complaints and made them to the proper people at American University in charge of these things to no avail.  This statement by opposing counsel is sanctionable as it is made for a false, misleading purpose.

I gave my heart and soul to American University for 15 years.  And my supervisors Thomas Leathers and Kevin Wyatt, especially after September 11, they started making fun of me and my religion, and my name and where I was from asking me about terrorism and why do you do that in Iraq, etc.

I loved my job at the University and I did not want to get fired and did not deserve to.  They are telling you one thing about why I was fired; but the real reason I was fired was because of my religion, I am Somalian and my complaints about my treatment at the University.  I am entitled to (at least) a trial to show you all of this -- and I firmly believe you will agree they fired me only because of my religion and where I am from and for complaining about it like I did.  I stood up to them and they did not like that when I complained to Human Resources.

Pursuant to local rules LCvR 56.1 and LCvR 7(h), attached is my Statement of Material Facts which are In Dispute and the attached affidavits, all of which contradict the reasons why they are telling you I was fired and which I ask you to incorporate herein as if stated fully herein as these are very important as they show the allegations against me are not true and/or false and also made by someone who is not only biased, knows and is friendly with Kevin Wyatt and Anthony Newman but also filed a false Declaration with this Court.

## I. ISSUES

**Failure to Accommodate**

It is unlawful[4] for an employer to refuse to reasonably accommodate an employee's religious observance unless there is an undue hardship on his business.[5] American University did not accommodate my religious observance request to pray during lunches; or they made it so hard that I was not able to do it. They have not shown that it would be a hardship on their business. Defendant is in violation of the law by not providing a reasonable accommodation when there is no evidence[6] that the accommodation would create an undue hardship?

**Disparate Treatment**

Disparate treatment occurs when an employer intentionally treats some people less favorably because of their religion or national origin. Defendant failed to enforce the same standards to the other employees who were not Muslim and/or foreign-born.

---

[4]    Civil Rights Act of 1964, §§ 701, 703(a)(1), 713, 42 U.S.C.A. §§ 2000e, 2000e-2(a)(1), 2000e-12 and D.C. Code § 2-1402.11©).

[5]    D.C. Code § 2-1402.11(c)(5) ("the employer shall have the burden of establishing that it would be unable reasonably to accommodate an employee's religious observance without incurring an undue hardship. . . "); 29 CFR 1605.2(b). "Duty to accommodate. (1) Section 701(j) makes it an unlawful employment practice under section 703(a)(1) for an employer to fail to reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business." *See Lawson v. State of Washington,* 319 F.3d 498, 502 (9th Cir. 2003) (dissenting opinion).

[6]    D.C. Code § 2-1402.11(c)(5) (The mere assumption that other employees with the same religious beliefs might also request accommodation shall not be considered evidence of undue hardship.")

**Pretextural Firing**

After this Court hears whether or not the witnesses are telling the truth at trial (as outlined in the attached Statement of Material Facts in Dispute showing Tanisha Jagoe's contradictory and false Declaration to this Court), the Court will realize that the only reason the Defendant fired me is because I was Muslim and/or from Somalia-- and the reasons they went out looking for and just created like making a left hand turn without a traffic light and dropping off passengers at an unauthorized stop-- were just to cover up the fact they wanted to get rid of me because my supervisors discriminated against me, were sick of my praying and then retaliated when I complained about them after September 11, 2001.

## III.  ARGUMENT

An employer must show it has taken some initial steps to reach a reasonable accommodation of the particular religious beliefs at issue. If the employer does not propose an accommodation, the employer must accept the employee's proposal or demonstrate that the employee's proposal would cause the employer undue hardship. *EEOC v Hacienda Hotel*, 881 F2d 1504, 1512 (9th Cir. 1989) *overruled on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

Here, I informed the defendant of my religious beliefs throughout my 15 years at American University and, for most of the time, they permitted me to practice my religion until after Kevin Wyatt (and with Thomas Leathers) was hired and September 11th,

things changed drastically. They created things and fired me based on something totally other than the real reason they fired me -- because of my religion, where I am from and my complaints about discrimination.    I did not do the things they say I was progressively fired for. Tanisha Jagoe has, frankly, lied and in regards to the July 2005 write-up, Defendant Kevin Wyatt destroyed the only direct information that would have shown who was driving that bus at that time, assuming what William Suter saw was true and despite other drivers not getting the same treatment for similar violations.

### III.  MY ARGUMENT
### THE LAW GOVERNING SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate the moving party has shown that there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Tripp v. Department of Defense*, 219 F.Supp.2d 85, 89 (D.D.C. 2002). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The non-movant may not rest solely upon its pleadings, but must set forth specific, probative facts showing that there is sufficient evidence to proceed to trial. *Id.* at 242, 248-50. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). Additionally,    Summary judgment may be granted <u>only</u> if the

pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c) (emphasis supplied). In considering a summary judgment motion, all evidence and inferences to be drawn from it must be considered in the light most favorable to me, Mr. Isse. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

As shown below, I had a *bona fide* religious belief that -- only at times -- conflicts an employment requirement, and I have informed Defendant of this belief; and -- yet I have suffered an adverse employment action. That is the *prima facie* case of a refusal to accommodate religious discrimination case.

It is not necessary to show specific intent to discriminate in order to prove a violation of Title VII. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971) ("good intent or absence of discriminatory intent does not redeem employment procedures . . . that operate as 'built-in headwinds' for minority groups . . .").

The material evidence in this case shows that as a matter of law, there are material facts in dispute, and Defendants are not entitled to summary judgment against me.

**A-1.    Standard of Proof for Claims of Disparate Treatment Under Title VII**

Defendant fails to provide the correct law for a disparate treatment analysis. Defendant only provides the law for "retaliation." and Defendants were on direct notice of retaliation for a long time before any EEOC charge was brought as outlined in

attached Statement of Material Facts in Dispute.

Disparate treatment occurs when an employee treats some people less favorably than others because of their religion and/or national origin.

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must provide evidence that "give[s] rise to an **inference** of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1148 (9th Cir.1997).

C.    **As Private Party Alleging Federal Civil Rights Violations I did not have to Pursue Internal Administrative Remedies Before Pressing a Claim in Federal Court.**

Even though I did not have to, I pursued internal procedures to fix the wrong that Defendants Wyatt and American University did against me. But now they are using those hearings against me. This honorable Court should not consider what happened at the hearing level in this case -- perhaps I should have just gone into Court instead of the hearing. I only wanted things to get fixed. They never did because the hearing was conducted by more people at American University who are not going to make a decision adverse to their employer who feeds them. They failed to contact all the people I said supported my version, instead choosing to rely on Ms. Tanisha who works with and socializes with Kevin Wyatt.    **B.    YOU MUST DENY SUMMARY JUDGMENT BECAUSE DEFENDANT REFUSED TO ACCOMMODATE MY RELIGION**

**1. The Failure to Accommodate is Itself a Title VII Violation**

A plaintiff alleging a failure to accommodate claim must show:

The employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977).

To make out a *prima facie* case of failure to accommodate his religion, I must show: (1) I had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) I informed my employer of the belief and conflict; and (3) the employer threatened me or subjected me to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir.1993); *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 133 (3d Cir.1986). I have done this through the attached affidavits, this Opposition and the Statement of Material Facts in Dispute.

"The prima facie case does not include a showing that the employee made any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) *citing, Proctor v. Consolidated Freightways Corp.*, 795 F.2d 1472, 1475 (9th Cir. 1986); *Anderson v. General Dynamics*, 589 F.2d 397, 401 n. 3 (9th Cir. 1978), *cert. denied*, 442 U.S. 921 (1979).

Once the employee has established a *prima facie* case, the burden of proof shifts to the employer to prove that it made good faith efforts to accommodate the employee's religious beliefs. *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989).

In the present matter, I have shown that I have a sincere religious belief, and the defendant has acknowledged this.

In *Trans World Airlines*, the Supreme Court briefly explained that this statute was enacted to resolve controversies concerning whether the obligation not to discriminate included an obligation to accommodate religious observance. *Id.* at 72-73, 75 n. 9. The Supreme Court concluded that "[t]he intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Id.* at 74. Thus, the employer has a statutory obligation to make reasonable accommodation for the religious observances of its employees.

Pursuant to *Trans World Airlines* an accommodation of religious observance is a statutory obligation and that failing to accommodate is itself an unlawful employment practice, without regard to whether this any another employment consequence. This is consistent with § 2000e(j).

The "[f]ailure to make such accommodation would be unlawful unless an employer can demonstrate that he cannot reasonably accommodate such beliefs, practices, or observances without undue hardship on the conduct of his business." 118 Cong. Rec. 7166 (1972); *see also* The Equal Employment Opportunity Act of 1972, The Bureau of National Affairs Operation Manual 44 (1973).

The legislative history indicates that the "failure to make such accommodation" absent undue hardship is itself "unlawful." Finding discrimination in a failure to accommodate situation does not require a showing that the employee be disciplined, discharged, or threatened with such actions.

Also, like in my case, in a hostile work environment harassment cases, it is the harassment itself that is an adverse term or condition of employment, without regard to any separate adverse employment action. *See generally Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742. However, as per the attached affidavits, Defendants refused to accommodate me and clearly could have by scheduling drivers, which they had ample, to cover me while I was praying on my specifically-requested lunch hour on Fridays.

An employee whose employer refuses accommodation has a cause of action, without more, for prospective relief requiring accommodation or damages for past failure to accommodate. failure to accommodate religious practices absent undue hardship is, without more, an unlawful employment practice under Title VII. Applying that standard, American University nor Kevin Wyatt is <u>not</u> entitled to summary judgment.

But most obviously, American University has discriminated against me by firing me for my religion, based on the pretext that I committed some minor, and conjured up traffic violations -- after 15 years of driving.

**<u>1. American University used the pretext of me violating minor traffic laws as a reason for firing me to cover up the real reason -- it wanted to get a Muslim out of there after September 11th who had made complaints about his being discriminated against.</u>**

In <u>Carney v. American University</u>, this Court said that in order for American University to win on its Motion for Summary Judgment, it must show sufficient admissible evidence from which the jury could find its reasons were non-discriminatory. I would respectfully suggest to this Honorable Court that after reading the affidavits attached to this Motion from witnesses who will appear

at trial and look at the Declaration of Ms. Tanisha Jagoe and her e-mails, that you will find American University decided to fire me because I was Muslim and/or from a foreign country-- then went out and tried to find bogus reasons to justify this decision the same which they would not impose against other employees-- the pretext.[7]

## CONCLUSION

Accordingly, I request this Court to deny Kevin Wyatt and American University's Motion for Summary Judgment against me.

Respectfully submitted,

Mohammed Isse
pro se
4939 Carriagepark Rd
Fairfax, VA 22032

---

[7] The University cites on page 18 of its Motion only **major offenses** for disciplining/firing other bus drivers like letting a bus roll down a hill striking a parked car, driving recklessly under suspicion of driving under the influence, and leaving a running bus unattended.  These are not failure to use a blinker or letting someone off too early allegations and are not equatable in any sense and proves my point: I was treated differently (even if one assumed Tanisha Jagoe is actually telling the complete truth which she is not or that Mr. Suter actually could identify me and the University actually kept the only direct proof of who was driving bus #160 at the time it was alleged to have not come to an absolute complete stop/used a blinker when turning which Mr. Suter can't and the University didn't.

## CERTIFICATE REGARDING SERVICE

I hereby certify that on this 17th day of August 2007, I served on counsel for Defendants Kevin Wyatt and American University, Hisham Khalid, Esq., a copy of Plaintiff's Opposition to Defendants' Motion for Summary Judgment with its attached Statement of Material Facts in Dispute and Supporting Affidavits by hand-delivery to him at his place of business at Office of General Counsel, American University, 3201 New Mexico Avenue, N.W., Suite 270, Washington, DC 20016 (202)885-3285.

Mohammed Isse

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

- - - - - - - - - - - - - - - X

MOHAMMED ISSE,

          Plaintiff,

      V.                 Case No. 6135-06(RM)

AMERICAN UNIVERSITY, et al.

         Defendant.

- - - - - - - - - - - - - - - X

### STATEMENT OF MATERIAL FACTS IN DISPUTE

1.    On many occasions, on a regular basis during my employment at American University, defendant Kevin Wyatt refused to allow me to attend Friday Muslim prayers.  See, attached Exhibits 1-4, affidavits of Ron Crowder, Sean Edwards, Will Spencer and Plaintiff.

2.    Defendant Kevin Wyatt was overheard by Ron Crowder, a shuttle bus driver, saying he, Wyatt, was "sick and tired of his[my] praying".  See, attached Exhibit #1.

3.    Defendant Kevin Wyatt was overheard by Ron Crowder, a shuttle bus driver, saying I "should go back to his country".  See, attached Exhibit #1.

4.    The comments by Defendant Wyatt became worse after 9-11. See, attached Exhibit #1.

5.    Defendant Wyatt's previous boss, Thomas Leathers, supervisor of Wyatt, was heard to say to me after 9-11 you "might want to consider changing your name".  See, Exhibit #2, affidavit of Will Spencer.

6.    Defendant Wyatt's current boss, Anthony Newman, Director of Risk Management and Transportation Services, refused to put a letter of commendation written by Lt. Will

Spencer in my file despite filing another letter Lt. Spencer wrote on behalf of a non-muslim, non-foreign fellow employee of mine". See, Exhibit #2, affidavit of Will Spencer.

7. The credibility and veracity of defendant American University's star witness, Tanisha Jagoe, whose claimed observations of me is admitted by American University in its Motion as the reason I was terminated on a progressive basis, is in serious doubt because her Declaration (Defendant's Exhibit #4) attached to Defendant's Motion for Summary Judgment is false as it directly contradicts her April 4, 2005 e-mail to Anthony Newman (Defendant's Exhibit #5). In her very-detailed e-mail to Mr. Newman on the very day she alleges she is on a bus on April 4, 2005, she states: "I believe Mohammed was driving". However, in her Declaration of May 29, 2007 attached to Defendant's Motion as absolute uncontroverted truth they had reason to fire me, and over two years after the supposed incident, she now swears "I recognized the driver of the 11:10 shuttle bus as Mohammed Isse. I was familiar with Mr. Isse because I had often ridden on shuttle buses operated by him." She states further: "I recognized Mr. Isse when I reported his unsafe driving".

On the date in question in April 2005 she only "**believes**" the driver was "Mohammed" and now, over two years later, in order to help bolster her employer's Motion, she now swears she "**recognized**" me based upon "often" ridding with me beforehand.

This Declaration is contradictory and false and must be presented to a jury on her credibility since Defendant American University admittedly relies almost exclusively on her for their Motion and also for terminating me.

This, contrary to the University's assertion in their motion, is actual probative evidence "that might support Mr. Isse's claims under the governing law" and therefore, the University's respectful request "the Court grant summary judgment on Mr. Isse's discriminatory discharge and retaliation claims and dismiss this case in its entirety" ought to be respectfully denied.

8. The credibility and veracity of defendant American University's star and self-assertedly unbiased witness, Tanisha Jagoe, whose claimed observations of me is admitted by American University as the reason I was terminated, is also in serious doubt because in her September 15, 2005 e-mail to Kevin Wyatt and Anthony Newman(Defendant's Exhibit #16) her bias against the driver of that bus is clear because it states: "to remind him he was on a bus and not in his taxi cab."[1]

9. Also in the September 15, 2005 very-detailed e-mail, Tanisha Jagoe also complained about the bus driver "honking at the people in front of him" and, despite saying absolutely nothing about what the other cars were doing or their drivers, i.e., honking their horns or yelling,

---

[1] The Court should realize the implication of her statement which essentially means: "this guy is a foreigner and should go back home" and/or simply "they all look or drive alike".

remarkably she writes: "cars were annoyed to have him hold up all the lanes."   Ms. Tanisha must explain to the jury how these other cars were so annoyed and why she failed to include that in her very-detailed e-mail. How does she know this?   Has she written other complaints about other bus drivers?   If so, who are they and what have they supposedly done?

10.   Per Tanisha Jagoe's own e-mails and Declaration wherein she states she had "regularly ridden the shuttle buses", she should be questioned before the jury as to why she was riding the buses, as she alleges, in the first place.   Was she looking for something I did wrong for the reason of firing me given my long record of complaints filed with the office about my being discriminated against at the University and of which she was no doubt aware given her position and her relationship with Kevin Wyatt?

11.   While American University attempts so hard in its attached affidavits to distinguish the office Tanisha Jagoe works for, i.e., Risk Management and Safety Services, and whom defendant Wyatt and his supervisor, Anthony Newman, work for, i.e., Risk Management and Transportation Services, these offices are not truly separated and, in fact, are located in the same building and the mail to both is addressed and delivered to the address.   What is Tanisha's relationship with Defendant Wyatt and Anythony Newman and what was discussed regarding Mr. Isse's complaints and when?

12.   The alleged notice of April 11, 2005 attached as Defendant's Exhibit #19, is insufficient in that it states "do not deviate off the normal routes". However, my "normal route" included a left hand turn which Defendant now alleges was not part of my normal route and therefore the University's bald assertion I violated this "direct order" is therefore incorrect.

13.   Both the April 4, 2005 and the September 15, 2005 e-mails from Tanisha Jagoe begin with "Hi Tony" and Hi Kevin" respectfully.    Clearly her relationship with these individuals is not only professional; it's personal.   What did she know about how they felt about me and when? Clearly, she is not unbiased as Defendants wish you to believe.

14.   Defendant University fails to properly and timely inform its drivers of new routes and would often switch routes without informing them.   <u>See</u>, affidavit of Ron Crowder.

15.   I was not informed of any new route change which prohibited any left turn from Grant and other drivers did the same and were never reprimanded/punished.   In fact, other driver were not so informed of route changes.

16.   Despite any prior evaluations, I never received a job or promotion despite applying and any of my pay raises were very low.

17.   I never spoke to Mr. Wyatt as he alleges on September 15, 2005.

18.   I never dropped off passengers at unauthorized stops as Tanisha Jagoe now alleges I did (despite her April 4, 2005 e-mail wherein she was not sure, i.e., "believes" I was the driver in direct contradiction of her Declaration only a few months ago asserting it was me she "recognized".

19.   On July 5, 2005 I did not run any stop sign or fail to use any turn signal.  The gas receipt in Defendant's Exhibit #11 means nothing.  There are other papers which would have shown which driver drove bus #160 that day such as route sheets which Defendant has purposely failed to attach to its Motion instead choosing to rely on innuendos and mere assertions.  The University keeps route sheets to track the number of passengers on each route and to make future plans. On these route sheets the driver is required to (1) sign and write his name down when he takes the bus out and when he leaves and (2) to count each passenger and report it on each route sheet.  Upon hearing of this warning letter, I asked Defendant Kevin Wyatt for a copy of the route sheet which would show I did not drive that #160 bus, but Wyatt said he threw it out. See, Defendant's Exhibit #14

20.   The e-mail written on July 11, 2005 contains no description of the driver by William Suter and nothing about from where Suter was such that he could make any accurate observations of the bus or its driver.  Therefore the jury should be presented with his ability to observe and my denial of operation of bus #160 that day and not some meaningless gas receipt.  Mr. Newman's conclusions "based

upon this evidence" is insufficient to conclude either I or Mickey Mouse was operating that vehicle and this Court should not adopt such findings, especially Kevin Wyatt's.

21. I was retaliated against and complained for a long time. The Director of HR Policy and Regulatory Affairs, Grace Karmiol, acknowledged one such complaint of retaliation in her May 1, 2002 letter (her May 7, 2003 letter repeats discriminatory claims) in Defendant's Exhibits #24 and 25. To now say the University was not on notice of such a retaliation claim is absurd and there is no prejudice because of this prior, on-going notice by me of retaliation and discriminatory practices against me at the University for years were made before I was terminated by pretext. In fact, the University denied the claim of retaliation from the start so their claim they could "conciliate it prior to this litigation"(page 30 of defendant's Motion) is not correct and is also a fact in dispute.

22. My repeated complaints of discrimination and retaliated started after Kevin Wyatt came to the University in 1999.

23. Defendants do not allege in its Motion they would have fired me for any one individual allegation of wrongdoing on April 4, 2005, July 2005 or September 2005. Instead, they state it was a "progressive" termination or firing. Therefore, any one of the allegations, if untrue or false, would reveal I was wrongfully terminated and for an illegitimate purpose as alleged by me.

Respectfully Submitted,

Mohammed Isse, Pro Se
4939 Carriage Park Road
Fairfax, VA 22032
(703)627-4827