IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - X
MOHAMMED ISSE,        :

Plaintiff,            :

v.                    :    Civil Action No. 06-1422(CKK)

AMERICAN UNIVERSITY:  :

Defendant
- - - - - - - - - X

NOTICE and OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff notifies this Court, in an effort to narrow the issues, he will not pursue his claims for retaliation or for age and race discrimination but pursues this matter only on religious and national origin discrimination.

Pursuant to Local Civil Rules 7(h) and 56(i) and this Court's August 21, 2007 Order, this is Plaintiff's Paragraph-by-Paragraph Reply to Defendant's Statement of Material Facts.

(1) Admitted.

(2) Admitted.

(3) Denied. Defendant states "On many occasions...Mr. Wyatt allowed Plaintiff to modify his regular lunch schedule in order to attend Friday Muslim prayer services." and cites, in part, the transcript of my deposition at pages 27-28 as proof thereof.

This citation is absolutely incorrect as I did not say anything about "many" or anything even remotely near that as claimed to this Court by the Defendant. In fact, what I stated on page 28 was this: "I attended a couple of times. I attended. After a little time, they give me a hard time because of Friday prayer." See, transcript at page 28 attached as Defendant's Exhibit 26. Before that I said: "But I have a difficult time to go

to Friday prayer, with them letting me go to Friday prayer."

How does Defendant get it is "undisputed" Mr. Wyatt allowed me, "on many occasions" to attend prayer from that? My testimony "few" and "difficult time" are in direct contradiction to the Defendant's assertion of "on many occasions". As stated below, this is not the only effort by defendant to mistate the real facts.

In fact, I contend the exact opposite and a jury should hear this (as well as from the University witnesses) to see who is telling the truth. <u>See</u>, also, Plaintiff's attached Exhibits 1-3, affidavits of Ron Crowder, Will Spencer and Sean Edwards which contradict Defendant's "Fact Not In Dispute".

Also, on page 42 and 43 of the transcript: "I missed them a lot of times." <u>See</u>, Defendant's Exhibit #26

4. Admitted as to the August 2004 evaluation but denied as to the 2005 evaluation of performance year 2004-2005. Some jurors may say the 2005 evaluation was satisfactory while others unsatisfactory as 3 of the 6 assessments are not up to par.

5. Denied. One need only read the Declaration of Tanisha Jagoe submitted to this Court and her e-mail of April 4, 2005 to know Ms. Jagoe's Declaration is false.

This is a material fact in dispute for which on its own should require Defendant's Motion for Summary Judgment to be summarily denied because the University admits it relied on her assertions to terminate me; a termination which was wrongful under the law and not for the purposes the defendant now alleges.

The credibility and veracity of defendant American University's star witness, Tanisha Jagoe, whose claimed

observations of me is admitted by American University in its Motion as the reason I was terminated on a "progressive disciplinary policy", is in serious doubt because her Declaration (Defendant's Exhibit #4) attached to Defendant's Motion for Summary Judgment is on its face false as it directly contradicts her April 4, 2005 e-mail to Anthony Newman (Defendant's Exhibit #5).

In Jagoe's very-detailed e-mail to Mr. Newman on the very day she alleges she is on a University bus on April 4, 2005, she states: "I **believe** Mohammed was driving". However, in her Declaration of May 29, 2007 attached to Defendant's Motion as absolute uncontroverted Gospel truth they had reason to fire me, and over two years after the supposed incident, she now swears: "I **recognized** the driver of the 11:10 shuttle bus as Mohammed Isse. I was **familiar** with Mr. Isse because I had often ridden on shuttle buses operated by him."

She states further in her Declaration: "I **recognized** Mr. Isse **when** I reported his unsafe driving".

Using the words "recognized" twice and "familiar with" me in her Declaration directly contradict her e-mail of the very day in question that she only "believe[s]" it was me.

The definition of believe as used by Ms. Jagoe in her e-mail is defined in The American Heritage Dictionary as: "to expect or suppose; to think"..." and uses the example: "I believe he will come shortly". If Ms. Jagoe was indeed "familiar" and "recognized" me as she now claims, she would not even have used the word "believe" in her e-mail. If her Declaration were true, her e-mail would have said: "Mohamed was driving."; not I "believe" he was.

On the date in question in April 2005, in the e-mail written at 11:47 a.m. regarding "the 11:10 shuttle", i.e. only about 30 minutes later, Ms. Jagoe only "**believes**" the driver was "Mohammed" and now, over two years later, in order to help bolster her own employer's Motion, Ms. Jagoe now swears to this Court she "**recognized**" me based upon "often" ridding with me beforehand.

This Declaration is contradictory and false and must be presented to a jury on her credibility since Defendant American University admittedly relies almost exclusively on Ms. Jagoe for their Motion and also for terminating me.

This fact alone, contrary to the University's assertion in their Motion for Summary Judgment, is actual probative evidence "that might support Mr. Isse's claims under the governing law" and therefore, the University's respectful request "the Court grant summary judgment on Mr. Isse's discriminatory discharge and retaliation claims and dismiss this case in its entirety" ought to be respectfully denied.

I also never dropped off passengers at unauthorized stops as Tanisha Jagoe now alleges I did. See, my affidavit attached as Exhibit #4. Also, on page 124-125 of the deposition transcript I deny I "let off passengers in a way he shouldn't have?" See, Defendant's Exhibit #41 and at page 247 I deny doing this.

I also was not driving the bus in question as alleged by Wyatt and Newman. See, deposition transcript at page 121.

6. Denied as the use of term "frequently" is subjective.

7. Denied as, in addition to not doing what is alleged to

have been done, any issued warnings were not for any driving violations for unauthorized stops but to get rid of me because of my religion and national origin. This is the basis of my complaint. <u>See</u>, my complaint and the attached Plaintiff's Exhibits 1-4.

8. Admitted.

9. Denied. I was not driving that bus at the time and did not do what was alleged by Mr. William Suter, who can not even identify who the driver was at the time. <u>See</u>, deposition transcript at page 126-128 and Exhibit #4, my affidavit.

10. Denied, any warning issued was not "based upon the July 11 incident" because I did not do as is alleged therein and any issued warnings were not for any driving violations but were issued solely to get rid of me because of my religion and national origin. This is the basis of my complaint. <u>See</u>, my complaint and the attached Plaintiff's Exhibits 1-4.

11. Admit only as to making a left on September 15th but deny all other assertions therein including anything attributed to Brenda Harner as nothing is attached to the Defendant's Motion from her.

The Court need not look any further than this September 2005 e-mail to question the credibility and veracity of defendant American University's star and self-assertedly unbiased witness, Tanisha Jagoe, whose claimed observations of me is admitted by American University as the reason I was terminated.

Her believability is cast in further doubt because in this September 15, 2005 e-mail to Kevin Wyatt and Anthony

Newman (Defendant's Exhibit #16) her bias against the driver of that bus is clear because it states: "to remind him he was on a bus and not in his taxi cab."

12. Denied. See, pages 143-146 and 152 of deposition transcript attached as Exhibit #41 to Defendant's Motion and my affidavit attached as Exhibit #4. A lot of times drivers were not even notified what new routes were. See, affidavit of Ron Crowder, attached as Exhibit #1.

13. Admitted.

14. Denied as the termination was not "based upon his repeated infractions and insubordination in disobeying the direct order not to deviate from approved routes." Please see answers 1-13 above. The route was approved. It was my normal route to make a left turn so I did not "change or deviate from the normal/regular shuttle routes" and I was told by Wyatt I could do this. See, deposition transcript at page 152 and 150-151.

15. Denied. Mr. Wyatt says he "interviewed other drivers" but fails to mention their names, instead citing only **one** driver who said he was told not to do something at a staff meeting. This has to be false or they would have named the drivers, provided affidavits from them or least come up with more than one name in an entire department of drivers over a period over years who can verify what Mr. Wyatt alleges is true! However, it is not. See, deposition transcript at page 150-154.

16. Denied. Plaintiff never spoke to Mr. Wyatt on September 15th as alleged he did. See, affidavit of plaintiff in attached Exhibit #4.

17.  Admitted but irrelevant as the allegations of misconduct in those termination cases are grossly unproportional to this matter even if the allegations against me were, in fact, true. Allowing a bus to crash, leaving a running bus unattended, driving reckless and suspicion of driving under the influence, etc. are grossly disproportionate to and not related at all to what I am alleged to have done by Defendant. Additionally, the three charges against me are not true as alleged herein above in 1-16 above.

18.  Denied.  There was no "full evidentiary hearing" conducted as stated.  It was a farce and this "hearing" is totally irrelevant to this matter.  No internal administrative hearing should ever be cited as evidence and is further proof of the weakness of defendant's case and the desperate lengths the defendant will go to attempt to persuade this Court of its untenable and unsubstantiated position.

19.  Denied.  This is a blatantly false, sanctionable representation of the facts.

I am accused by American University's lawyer of admitting my representation to the Review Board was false and this is restated on page 9 of their Motion: "Mr. Isse also claimed Mr. Wyatt retaliated against him for alleged prior discrimination complaints he now admits he did not make."

If this Court looks at page 3 of my letter (Defendant's Exhibit #21 and which is the subject of the testimony) where I state I specifically "complained about this to Human Resources

several times(for example: January 30, 2002 letter to Brenda Harner[1], Policy Analyst and March 27, 2003 letter to Beth Muha, Execute Director, Human Resources)" actually refers to the very-first sentence of that very paragraph: "I have faced harassment and discrimination from Thomas Leathers(at that time Manager of Transportation Services) and Kevin Wyatt(Shuttle Supervisor). I feel this discrimination occurred on the basis of my national origin and religion."  It did not refer, as Defendant's lawyer falsely tries to claim to this Court in its Motion, to the specific follow-up sentence about their telling me to change my muslim name or not allowing me to attend prayers.

Counsel for Defendant took this completely out of context and also unscrupulously attempted to use it against me in my deposition. However, if you look at my transcript at page 218-219(Defendant's Exhibit #26) I specifically answer I informed American University **verbally** of this before: "No, I tell them verbally." just like I stated on page 75-77, 111-112, 198-199 and 201 of the transcript which Defendants' attorney somehow fails to mention to this Court in it's Motion yet keeps asking over and over again during the deposition hoping to get a different answer from

---

[1] It is very interesting to note Brenda Harner still works for American University and her name is referenced in Defendant's Motion as a co-witness with Tanisha Jagoe to the September 15, 2005 allegation, yet the only evidence in its Motion in addition to the false Jagoe Declaration is that the Declaration of Anthony Newman, Kevin Wyatt's supervisor, is essentially he spoke to somebody who spoke to somebody.  See, paragraph #16 of Newman's Declaration, Defendant's Exhibit #2.  Brenda Harner's affidavit is surprising not supplied, instead Defendants choosing innuendo and an incredible witness.

an unrepresented deponent.[2]

I never testified I never made any prior complaints of discrimination against Mr. Wyatt for which he retaliated against me like the University's lawyer wants you to believe. Nor did I ever admit anything I said was "false". I did make such complaints and made them to the proper people at American University in charge of these things, all to no avail.

This statement by opposing counsel is sanctionable as it is made for a false, misleading purpose.

20. Admit but this is another effort by Defendant simply to make me look like a bad person before this Court and has absolutely nothing to do with this case whatsoever.

21. This can neither be denied or admitted by me but is so irrelevant to this matter it defies a response. If some Acting Provost reviews some Board's finding, all of whom are all employed by a defendant, does that mean no juror could possibly find for a plaintiff like me? I think not or jurisdiction would stop at any administrative hearing held by a defendant.

---

[2] I also was not clear on the question. I answered: "What do you want to know?" given it was a confusing question like so many in the deposition. For example, here's one question on page 257: Q: "You assume he knows that? Was he at the turn? Was he at the turn signal? Does he stay at Albemarle, Grant Street, and Pennsylvania Avenue? I am asking you, how do you know that? What personal knowledge do you have that Wyatt knew that other people were taking that turn?" This is all one question.
Some were also inappropriate. On page 128: "Q:Okay. Would it be reasonable for Kevin Wyatt to conclude that you were driving that bus based upon the fact that someone reported that the bus was driving onto campus at that hour? A: What do you mean? Q: In your view, is it reasonable for Kevin Wyatt to conclude that you were the driver of that bus?"

22. Denied. I did not check the boxes as defendant alleges. They were typed by the EEO employee.

23. Admitted.

24. Admitted.

                                    Respectfully Submitted,

                                    _____
                                    Mohammed Isse, Pro Se
                                    4939 Carriage Park Road
                                    Fairfax, VA 22032
                                    (703)627-4827

Date: September 6, 2007


## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2007 a hand-delivered copy of the attached Plaintiff's Response to Defendant's Statement of Material Facts Not In Dispute, Notice to the Court to drop the age, retaliation and race claims, my Opposition to Defendant's Motion for Summary Judgment, my Statement of Material Facts In Dispute, attached Exhibits(4 Affidavits), and a Proposed Order in the above-referenced case was delivered to counsel for American University, Hisham Khalid, Esq., at his place of business at the Office of General Counsel, American University, 3201 New Mexico Avenue, N.W., Suite 270, Washington, DC 20016 (202)885-3285.

                                    _____
                                    Mohammed Isse, Pro Se