IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED ISSE,

Plaintiff,

v.

AMERICAN UNIVERSITY, et al.,

Defendants.

Civil Action No. 1:06CV01422 (CKK)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Nothing in Mr. Isse's opposition alters the conclusion that the University is entitled to summary judgment in this case. 1/ Although he continues to contest the disciplinary actions that led to his termination, there can be no genuine dispute that Transportation Services Director Tony Newman reasonably believed that he had committed the infractions for which he was discharged -- as several other entirely neutral decisionmakers, including the University's Human Resources Department, members of the Staff Personnel Review Board, and the Acting Provost, likewise concluded. As explained in defendants' opening memorandum, moreover, Mr. Isse's allegations of pretext, even if true (and they are not), are plainly insufficient under the settled law of this Circuit to prove that the University terminated his employment not because of his repeated safety violations, but because of his religion. The University accordingly is entitled to summary judgment on Count One of Mr. Isse's Complaint alleging discriminatory discharge.

1/ Mr. Isse does not dispute that the claims against Mr. Wyatt must be dismissed because there is no individual liability under Title VII. See Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 1 n.2.

Mr. Isse has expressly abandoned the sole remaining Count in his Complaint, his Count Two retaliation claim. See Notice and Opposition to Defendant's Motion for Summary Judgment at 1 ("Pl. Notice"). 2/ His effort to recast that claim as a failure-to-accommodate claim, for the first time in his summary judgment opposition, is not properly before the Court. And even if it were, the claim is clearly time-barred because it accrued, according to Mr. Isse's own allegations, well outside the 300-day period preceding his EEOC charge. The claim also fails on the merits, because Mr. Isse cannot establish a prima facie case of failure to accommodate.

For these reasons, discussed more fully below, defendants are entitled to summary judgment on the entirety of Mr. Isse's Complaint, and his claims should be dismissed with prejudice.

## I. THE UNIVERSITY IS ENTITLED TO SUMMARY JUDGMENT ON MR. ISSE'S DISCRIMINATORY TERMINATION CLAIM

As explained in defendants' opening memorandum, to prevail on his Title VII discriminatory discharge claim, Mr. Isse must prove both that the University's stated reasons for his discharge are untrue and that the real reason was his religion. 3/ Def. Mem. at 12-14 & n.9. "[T]he issue is not 'the correctness . . . of the reasons offered . . . [but] whether [the University] honestly believes in the reasons it offers." Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (emphasis added) (quoting McCoy v. WGN

---

2/ Mr. Isse also purports to abandon age and race discrimination claims that he did not assert in his Complaint. Pl. Notice at 1.

3/ Mr. Isse's national origin claim, which was not pleaded in his Complaint, fails for the reasons stated in the text, because the legal standards applicable to national origin and religious discrimination claims are the same. See Matta v. Snow, 2005 WL 3454334, at *17-18 (D.D.C. Dec. 16, 2005) (Kollar-Kotelly, J.) (applying McDonnell Douglas framework to national origin claim).

Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)). That, in Mr. Isse's opinion, his "termination may not have been fair" does not prove that it was discriminatory. Vickers v. Powell, 493 F.3d 186, 196 (D.C. Cir. 2007). Rather, to survive summary judgment, he must prove a "demonstrably discriminatory motive." Waterhouse v. District of Columbia, 298 F.3d 989, 995 (D.C. Cir. 2002) (internal quotation marks omitted). His evidence of pretext, moreover, "to be probative . . . must have some nexus to the [termination] decision." Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000) (emphasis added), aff'd, 298 F.3d 989 (D.C. Cir. 2002); Def. Mem. at 24-25. Mr. Isse's evidence is clearly deficient under these controlling legal standards. 4/

**A. Mr. Isse Has Adduced No Evidence That The University Did Not Reasonably Believe That He Committed The Infractions That Led To His Discharge**

No reasonable juror could conclude that Mr. Newman -- and the Human Resources Department, the Acting Provost, and the Review Board members, all of whom approved the termination decision -- did not reasonably believe that the disciplinary actions that led to Mr. Isse's discharge were warranted. With regard to the April 2005 incident, Mr. Isse objects that Ms. Jagoe's email reporting his unauthorized stops stated only that she "believe[d] Mohammed was driving." Exhibit 4 (emphasis added). 5/ But Ms. Jagoe, who regularly rode University shuttles and recognized Mr. Isse by sight, did not intend by using that phrase to

---

4 / "[T]he central element" of a disparate treatment claim such as Mr. Isse's "is discriminatory intent." Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2167 (2007). Griggs v. Duke Power Co., 401 U.S. 424 (1971), which he cites for the proposition that proof of intent is not required, Pl. Opp. at 8, announced the disparate impact theory of recovery under Title VII (which applies to facially neutrally policies that adversely affect members of a protected class), and thus is inapplicable.

5 / Except where otherwise indicated, all references herein to "Exhibits" refer to the exhibits attached to defendants' memorandum in support of their summary judgment motion.

suggest that she had any doubt about her identification of him. Id. ¶¶ 2, 4; Supplemental Declaration of Tanisha Jagoe ¶ 2 ("Supp. Jagoe Decl."), attached hereto as Exhibit A. Rather, she simply meant to acknowledge that, given the seriousness of the infraction, the Transportation Services Department had responsibility for investigating the incident and imposing any appropriate discipline. Id. Indeed, the record is undisputed that after receiving Ms. Jagoe's email, Mr. Newman did obtain confirmation from Mr. Wyatt that Mr. Isse was, in fact, the scheduled relief driver on the bus in question. Exhibit 1, ¶ 8; Exhibit 3, ¶ 12. The University therefore clearly had a reasonable basis for believing that Mr. Isse committed the safety infraction for which he received his first Level II warning, and Ms. Jagoe's offhand use of the word "believe" creates no genuine issue for trial. 6/

With regard to the July 2005 incident that led to Mr. Isse's second Level II warning, Mr. Isse has admitted that he was driving bus #160 on the morning in question, Exhibit 14, at 2, as a gas receipt containing his signature confirms. Exhibit 1, ¶ 10; Exhibit 3, ¶ 14; Exhibit 11. He speculates that some other unidentified person must have taken the bus for a drive without his knowledge at the precise moment that Mr. Suter observed it turn without signaling and run a stop sign. Exhibit 26 at 126-128; Pl. Notice ¶ 9. This unsupported and implausible allegation is wholly insufficient to defeat summary judgment. Because Mr. Isse

---

6/ Mr. Isse's remaining allegations about Ms. Jagoe are frivolous. He contends that she regularly rode the shuttle in order to catch him in safety violations, and that she did so because of her "personal" relationships with Mr. Wyatt and Mr. Newman (supposedly demonstrated by her use of their first names, just as she used Mr. Isse's first name, in emails), about whom she knew Mr. Isse had complained to the Human Resources Department. Plaintiff's Statement of Material Facts in Dispute at ¶¶ 10, 13 ("Pl. Material Facts"). Ms. Jagoe was unaware of Mr. Isse's prior complaints. Supp. Jagoe Decl. ¶ 3. His unfounded allegations -- like his claim that Ms. Jagoe demonstrated national origin animus when she compared his shuttle bus driving to taxicab driving, Pl. Material Facts ¶9 & n.1; Pl. Notice ¶ 11 -- cannot be taken seriously.

does not deny that he was the scheduled driver, moreover, the absence of a "route sheet" further confirming that fact does not, as he contends, create a triable dispute. See Pl. Material Facts ¶ 19.

Nor is there any genuine dispute that Mr. Newman reasonably believed that Mr. Isse willfully violated University policy by deviating from an established route in September 2005. Mr. Isse admits that he made the prohibited left turn onto Wisconsin Avenue from Grant Road, Pl. Notice ¶ 11, and argues only that he was unaware of the prohibition. 7/ The undisputed documentary evidence shows, however, that "All Shuttle Personnel" were instructed in the April 2005 "Route Summary" memorandum to use Albemarle Street, not Grant Road, and were further directed not to deviate from this published route without permission. Exhibit 18, at 2-3; Exhibit 19. Two other shuttle drivers have stated that they received this memorandum and discussed the proper routes with other drivers, including Mr. Isse. Exhibit 6, ¶¶ 4-5; Exhibit 7, ¶¶ 4-5. Mr. Isse objects that the University has not submitted additional driver declarations, Pl. Notice ¶ 15, but he has offered no admissible evidence that any other drivers were unaware of the published route or continued to use Grant Road with management's knowledge and were not disciplined for doing so. Def. Mem. at 19-21. 8/ Thus, even if, as Mr. Isse implausibly claims, he never received the Route Summary and never attended any of the meetings at which the published routes were discussed, there can be no genuine dispute that the University reasonably

---

7 /   Mr. Isse objects that the University did not provide a declaration from Brenda Harner, who corroborated Ms. Jagoe's report that Mr. Isse had taken Grant Road. Pl. Opp. at 2 n.2. Because he admits that he did so, the absence of Ms. Harner's testimony creates no material dispute. At any rate, for the sake of completeness the University has attached hereto a declaration from Ms. Harner setting forth her observations of the incident. See Declaration of Brenda Harner, attached hereto as Exhibit B.

8 /   Ron Crowder's conclusory statement that "a lot of the times [sic] no one would tell me what the new route was," Pl. Exhibit 1, ¶ 7, obviously does not suffice to prove that he or any other shuttle driver was unaware of the prohibition against using Grant Road after April 2005.

believed he had violated an express order of which he was aware. He therefore has failed to cast any meaningful doubt on the University's proffered reason for the third Level II violation that precipitated his discharge, nor has he produced any probative evidence that similarly situated co-workers were treated more favorably than he. 9/

For these reasons, Mr. Isse has failed to identify any material factual dispute concerning the University's asserted reasons for the disciplinary actions that led to his termination.

**B. Mr. Isse's Allegations of Religious Animus, Even if True, Are Legally Insufficient to Prove Pretext**

Even assuming arguendo the existence of a material dispute about the University's proffered reasons for Mr. Isse's discharge, no reasonable factfinder could conclude that the real reason for his termination was his religion. Mr. Isse's opposition adds nothing to the pretext allegations that the University has already demonstrated are legally insufficient to defeat summary judgment. Def. Mem. at 21-26.

Notably, Mr. Isse offers no evidence that Mr. Newman, who made the decision to terminate his employment, or the numerous University personnel who approved that decision -- including members of the Human Resources Department and Review Board, and the Acting

---

9 / Mr. Isse contends that the safety violations for which he was disciplined and ultimately discharged were "minor" compared to the safety violations for which other shuttle drivers have been disciplined and discharged. Pl. Opp. at 12; Pl. Notice ¶ 17. But it is the plaintiff's burden in a disparate treatment case to identify comparator employees treated less harshly for the same infractions, and Mr. Isse has not done so. See Def. Mem. at 18-21. Furthermore, his subjective opinion about the relative seriousness of other disciplined employees' infractions is immaterial. Mr. Isse does not dispute that the infractions for which he was sanctioned qualified as Level II violations, and he admits that three such violations generally warrant discharge under University policy. Pl. Notice ¶ 8; Defendants' Statement Of Material Facts As To Which There Is No Genuine Dispute ¶ 8.

Provost -- harbored discriminatory animus against him. 10/ Rather, his allegations are directed against his first-level supervisor, Mr. Wyatt. Because it is undisputed that Mr. Wyatt did not make the discharge decision, and that the decision was reviewed and approved by several other entirely neutral decisionmakers, no reasonable juror could conclude from the allegations against Mr. Wyatt that Mr. Isse's discharge was improperly motivated. See Adelman-Reyes v. Saint Xavier Univ., __ F.3d __, __, 2007 WL 2684813, at *4 (7th Cir. Sept. 14, 2007) (anti-Jewish comments by dean involved in tenure decision held legally insufficient to establish pretext where plaintiff conceded that other decisionmakers, including university president and rank-and-tenure committee members, were not motivated by religious animus).

Furthermore, Mr. Isse's allegations against Mr. Wyatt have absolutely no connection to the termination decision and thus cannot, as a matter of law, establish pretext. Waterhouse, 124 F. Supp. 2d at 12. Def. Mem. at 24-25. The few alleged comments that he identifies with any specificity occurred, by his own account, years before his discharge. For example, Mr. Crowder claims that he overheard Mr. Wyatt say he was tired of Mr. Isse's praying, and that he should return to his own country, "[s]hortly after" Mr. Crowder began working at the University in 2000. Pl. Exhibit 1, ¶ 2. Mr. Isse likewise claims that Mr. Wyatt made negative references to Muslims, and jokingly suggested that he change his name, after the terrorist attacks of September 11, 2001. Pl. Exhibit 4, ¶¶ 2-4; Exhibit 26 at 79-81. Even if true (and they are not), these allegations, under controlling D.C. Circuit precedent, are far too removed from Mr. Isse's September 2005 discharge to create any genuine dispute as to pretext. See Freedman v. MCI

10/ Will Spencer's assertion that Mr. Newman refused to put a commendation letter in Mr. Isse's file is untrue and is, in any event, not all probative of anti-Muslim animus. See Supplemental Declaration of Tony Newman ¶ 2, attached hereto as Exhibit C. Mr. Newman was not in Officer Hilliard's chain of command in the Public Safety Department and thus would have had no authority to place a commendation letter in Hilliard's file, as Mr. Spencer claims. Id. ¶ 3.

Telecommunications Corp., 255 F.3d 840, 842, 848 (D.C. Cir. 2001) (perceived derogatory comment about plaintiff's religion made within a year of plaintiff's termination legally insufficient to defeat summary judgment).

Indeed, Mr. Isse's contention that the University "suddenly start[ed] coming up with reasons for terminating" him "after September 11," Pl. Opp. at 2, is demonstrably false. Mr. Isse has not identified any disciplinary actions taken against him before 2005, and he has admitted that his annual performance reviews, except for noting the 2005 disciplinary warnings, were always satisfactory. Complaint ¶ 9; Def. Mem. at 25.

Mr. Isse's allegation that he was often unable to attend Friday Prayers, even if true (and it is not), also does not suffice to prove that he was discharged because of his religion. He now disputes that he conceded in his deposition that Mr. Wyatt allowed him to attend Friday Prayers on many occasions. Pl. Notice at 1-2. But Mr. Isse clearly testified that during 2004 he missed Friday Prayers only about 10 times -- which means that he would have attended more than 30 times; and that in 2003 he missed "three times or two times a month" -- which means that he attended at least 10-20 times. Exhibit 26 at 43. By his own account, then, Mr. Isse was allowed to attend Friday Prayers dozens of times after he claims he was first denied the opportunity to do so in 2000. Exhibit 35. Given this admission, Mr. Wyatt's alleged refusal to accommodate Mr. Isse on other occasions, as a matter of law, is not evidence of religious animus. See Ahmad v. Nassau Health Care Corp., 234 F. Supp. 2d 185, 194 (E.D.N.Y. 2002) (employer's refusal to give employee full time off for religious holiday not evidence of religious animus where employee was allowed to take some time off, and employer had "legitimate scheduling concerns"), aff'd, 71 Fed. Appx. 98 (2d Cir. 2003). Furthermore, because Mr. Isse claims that Mr. Wyatt told him he could not attend Friday Prayers as early as 2000, his allegation is far too

removed from his 2005 discharge to prove pretext. See Freedman, 255 F.3d at 842 (supervisor's anger over accommodation request less than one year before termination insufficient to prove pretext). See also Elmenayer v. ABF Freight Sys., Inc., 2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001) (supervisor's negative comments about plaintiff's request to attend Friday prayers, made eighteen months before his discharge, insufficient to prove pretext), aff'd, 318 F.3d 130 (2d Cir. 2003). 11/

Because Mr. Isse's evidence falls far short of establishing that he was discharged not because of his repeated safety violations, but because of his religion, his discriminatory discharge claim fails as a matter of law, and the University is entitled to summary judgment on Count One of his Complaint.

## III. THE UNIVERSTIY IS ENTITLED TO SUMMARY JUDGMENT ON MR. ISSE'S FAILURE-TO- ACCOMMODATE CLAIM

### A. The Accommodation Claim Is Not Properly Before The Court

Mr. Isse has abandoned the only other claim stated in his Complaint -- that he was "[r]etaliat[ed] against . . . for seeking reasonable accommodation." Complaint p. 4. 12/ He did not separately plead a failure-to-accommodate claim, and that claim -- now asserted in his

---

11 / Mr. Isse also attempts to disavow his explicit admission in his deposition testimony that he "didn't mention" his supposed inability to attend Friday Prayers, or Mr. Wyatt's alleged comments, in his written complaints to the Human Resources Department, and that his contrary representation to the Review Board (Exhibit 21) "was not correct." Exhibit 26 at 218-219. See Pl. Notice at 19; Pl. Opp. at 2-4. Whether or not he complained verbally, his failure ever to put these allegations in writing -- when he filed numerous written complaints about many other aspects of his employment -- casts significant doubt on their veracity. Def. Mem. at 10 & n.6, 22.

12 / As explained in defendants' opening memorandum, Mr. Isse could not prevail on the retaliation claim in any event both because he failed to exhaust this claim in his EEOC charge and because he cannot demonstrate the required causal connection between his accommodation requests and his termination. Def. Mem. at 26-32.

opposition -- is accordingly not properly before the Court. See, e.g., Washington v. Thurgood Marshall Academy, 2006 WL 1722332, at *17-18 (D.D.C. June 19, 2006) (Kollar-Kotelly, J.) (dismissing discrimination claim raised for first time in summary judgment opposition). And even assuming that Mr. Isse's accommodation claim is properly presented, the University is entitled to summary judgment, because the claim is time-barred and, in any event, is meritless.

**B. The Accommodation Claim Is Untimely**

In the District of Columbia, a Title VII claim is time-barred if the plaintiff does not file an EEOC charge within 300 days of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). See Carter v. George Washington Univ., 387 F.3d 872, 879 (D.C. Cir. 2004). Mr. Isse's January 4, 2006 EEOC charge (Exhibit 35) is five years too late. The law is clear that the rejection of an accommodation request is not a "continuing violation," but rather constitutes a "discrete act of discrimination" that triggers the statutory charge-filing requirement. Mayers v. Laborers' Health & Safety Fund of North America, 478 F.3d 364, 368-369 (D.C. Cir. 2007) (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). Accord Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134-135 (2d Cir. 2003) (holding that employer's rejection of Muslim driver's request to modify lunch schedule to attend Friday Prayers outside 300-day period was time-barred). By Mr. Isse's own account, he was denied permission to attend Friday Prayers as early as 2000, and he claims that he understood no later than February 2004 that Mr. Wyatt's alleged refusal of his request meant he "could never attend Friday prayer." Exhibit 26 at 36. His accommodation claim is therefore plainly time-barred. See Fox v. Lear Corp., 327 F. Supp. 2d 946, 951-952 (S.D. Ind. 2004) (plaintiff's religious accommodation claim held untimely where plaintiff knew employer would not provide weekly accommodation for Sabbath seventeen months before he filed his charge).

Mr. Isse's allegation that he was repeatedly denied permission to attend Friday Prayers does not save his claim. As an initial matter, summary judgment is proper because Mr. Isse has failed to proffer any "'specific facts'" to show that the University ever denied him the opportunity to attend Friday Prayers during the 300-day period before he filed his EEOC charge. Stewart v. Saint Elizabeth's Hosp., 2007 WL 2257220, at *11 (D.D.C. Aug. 3, 2007) (Kollar-Kotelly, J.) (quoting Fed. R. Civ. P. 56(e)). Furthermore, as this Court has held, it is well settled that a discrimination claim accrues "at the time when the plaintiff knew or had reason to know of the injury serving as the basis for his claim." Stewart v. District of Columbia, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006) (Kollar-Kotelly, J.) (internal quotation marks omitted). "[T]he plaintiff does not have *carte blanche* to defer legal action indefinitely if [he] knows or should know that [he] may have suffered injury." Id. at *4 (internal quotation marks omitted). Thus, a failure-to-accommodate claim "accrue[s] when the Defendant first denie[s]" the plaintiff's request, and renewed requests for the same accommodation do not "re-start" the limitations clock. Id. at *5-6 (emphasis added). For all of these reasons, to the extent that Mr. Isse's failure-to-accommodate claim is properly before the Court, it is clearly untimely and should be dismissed.

**C. Mr. Isse Cannot Prove A Prima Facie Case of Failure to Accommodate**

Mr. Isse's accommodation claim also fails as a matter of law on the merits, because he cannot establish even a prima facie case. In this Circuit, a prima facie case of failure to provide religious accommodation under Title VII requires proof that the plaintiff (1) had "a *bona fide* religious belief that conflict[ed] with [an employment] requirement"; (2) "informed [the employer] of the belief and conflict"; and (3) was "discharged" -- or otherwise disciplined -- "for refusal to comply with [the employment] requirement." Taub v. FDIC, 1997 WL 195521, at *1 (D.C. Cir. Mar. 31, 1997). Accord Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76,

95 (D.D.C. 2006); Rasch v. National R.R. Passenger Corp., 1991 WL 221270, at *4 (D.D.C. Oct. 11, 1991), aff'd, 993 F.2d 913 (D.C. Cir. 1993). The same standard has been adopted by many other circuits, as the authorities cited in the foregoing cases demonstrate. See, e.g., Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006); Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 767 n.17 (3d Cir. 2004) (Scirica, J., concurring); Jones v. TEK Indus., Inc., 319 F.3d 355, 359 (8th Cir. 2003); Daniels v. City of Arlington, 246 F.3d 500, 506 (5th Cir. 2001); Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996).

Mr. Isse's accommodation claim fails at the threshold because he cannot satisfy the third element of his prima facie case. Even assuming, as he claims, that he was often scheduled to work during Friday Prayer time, there is no dispute that Mr. Isse never refused to drive an assigned route due to the alleged conflict, and he was thus never disciplined for doing so.

Mr. Isse's allegations closely resemble the facts at issue in Thompson v. Kaufman's Bakery, Inc., 2005 WL 643433 (W.D.N.Y. Mar. 16, 2005). There, a Muslim employee was scheduled to work on Saturdays in conflict with his Sabbath. Despite his objection, the employee worked the Saturday shift and thus never suffered any loss in wages or disciplinary action. Id. at *2. The court held that the "undisputed [fact] that Plaintiff was never disciplined for failing to comply with the requirement that he work on Saturdays" was "fatal to his religious discrimination claim." Id. at *8. As the court reasoned:

> "By agreeing to work on [his] Sabbath, whether willingly or reluctantly, Plaintiff avoided suffering any adverse employment consequences as a result of [his] religious beliefs; rather, [his] personal religious observance suffered on account of [his] adherence to [his] work schedule. Yet, Title VII protects only the former, employment-related interests from abridgement."

Id. (quoting Stone v. West, 133 F. Supp. 2d 972, 985 (E.D. Mich. 2001)) (emphasis in original). See also 42 U.S.C. § 2000e-2(a) (prohibiting employers from "discharg[ing] any individual, or

otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion") (emphasis added).

Other courts have applied the same reasoning to reject religious accommodation claims on summary judgment where the plaintiff has suffered no adverse employment action. See, e.g., Stone, 133 F. Supp. 2d at 986 (by continuing to work on her Sabbath, plaintiff "effectively absolved her employer of the responsibility to reasonably accommodate her beliefs"). Accord Ellis v. Principi, 2007 WL 2510620, at *4 (5th Cir. Sept. 5, 2007) (unpub.) (employee who did "not even allege that she was subjected to any adverse employment action, much less a discharge or disciplinary action," because of a conflict between her work schedule and weekly church services, failed to state prima facie case); Goldmeier v. Allstate Ins. Co., 337 F.3d 629, 637 (6th Cir. 2003) ("discharge or discipline remains an element of a prima facie case of religious discrimination in employment"); Rashad v. Fulton County, Ga., 2007 WL 1020846, at *5 (N.D. Ga. Mar. 29, 2007) (granting summary judgment to employer where employee who stopped attending Friday services because he was required to use vacation time to do so "failed to present any evidence showing he was disciplined or terminated for his inability to work on Friday afternoons while he attended religious services"); Austin v. Wal-Mart Stores Texas, L.P., 2006 WL 2859367, at *9 (N.D. Tex. Oct. 5, 2006) ("acquiescence in a business requirement that conflicts with a religious belief is [in]sufficient to allege a prima facie case of religious discrimination") (emphasis in original); Martin v. Enterprise Rent-A-Car, 2003 WL 187432, at *9 (E.D. Pa. Jan. 15, 2003) (plaintiff whose work schedule conflicted with his Sabbath "failed to produce any evidence that [his employer] took any adverse employment action against him, an indispensable requirement under Title VII").

      Mr. Isse's allegations compel the same conclusion. Because he does not claim that he suffered any adverse employment action for refusing to comply with a requirement to work during Friday Prayer time, he cannot establish a prima facie case of failure to accommodate.13/ Accordingly, even if the Court reaches the merits (as discussed above, it should not), the University is entitled to summary judgment on Mr. Isse's failure-to-accommodate claim. 14/

13/ Mr. Isse argues that he need only prove that he was "threatened" with adverse treatment. Pl. Opp. at 10. Even if that were a correct statement of the law in this Circuit (it is not), he has adduced no such evidence. Sean Edwards' conclusory claim that Mr. Wyatt once "threatened" Mr. Isse when he requested a break for Ramadan (an event which, had it occurred, would have taken place no later than 2001, Pl. Exhibit 3, ¶¶1, 3) is not even substantiated by Mr. Isse's own testimony concerning the alleged incident, in which he claimed only that Mr. Wyatt commented that he was "tired of the praying." Deposition of Mohammed Isse at 51-55, attached hereto as Exhibit D.

14/ Because Mr. Isse cannot prove a prima facie case, this Court need not reach the question whether the University's alleged refusal to allow him to attend Friday Prayers on some occasions was justified by "undue hardship." The University notes, however, that Mr. Isse's failure to identify specific instances when his request was purportedly denied makes it impossible to determine whether, as he conclusorily claims, the University had "ample" relief drivers to accommodate him.

**CONCLUSION**

For all of the foregoing reasons and the reasons set forth in defendants' motion for summary judgment and supporting memorandum, defendants respectfully request that the Court grant them summary judgment on both counts of Mr. Isse's Complaint and dismiss this case in its entirety.

Respectfully submitted,

/s/ Hisham Khalid_________________

Hisham R.O. Khalid, Esq. (D.C. Bar # 44594)
Associate General Counsel
American University
4400 Massachusetts Avenue, N.W.
Washington, D.C. 20016-2724
Tel. (202) 885-3285
Fax (202) 885-3273

Attorney for Defendants
American University and Kevin Wyatt

Dated: September 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply In Support of Defendants' Motion For Summary Judgment was served this 21st day of September, 2007, by first-class U.S. mail, postage prepaid, upon:

Mohammed Isse
4939 Carriage Park Road
Fairfax, VA 22032

/s/ Hisham Khalid_______________
Hisham Khalid