UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED ISSE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:06CV01422 (CKK) |
| AMERICAN UNIVERSITY, et al. | ) ) ) |
| Defendants. | ) ) |

**AMERICAN UNIVERSITY'S MOTION
FOR PARTIAL RECONSIDERATION**

Defendant American University hereby respectfully moves the Court for partial reconsideration of its February 25, 2008 Order denying the University's Motion for Summary Judgment and for entry of summary judgment for the University on plaintiff's termination claim. The grounds for the University's motion for reconsideration are set forth in the accompanying memorandum, which is incorporated herein by reference. 1/

---

1/    The University also incorporates by reference its original Motion for Summary Judgment, the Reply in Support of that Motion, and the accompanying Exhibits and Statement of Material Facts As To Which There Is No Genuine Issue.

2

Respectfully submitted,


 /s/  Hisham Khalid
Hisham R.O. Khalid, Esq. (D.C. Bar # 445494)
Associate General Counsel
American University
4400 Massachusetts Avenue, N.W.
Washington, D.C. 20016-2724
Tel. (202) 885-3285
Fax (202) 885-3273

Attorney for Defendants
American University and Kevin Wyatt

Dated:  March 10, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED ISSE,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN UNIVERSITY, et al.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06CV01422 (CKK)<br>)<br>)<br>)<br>)<br>) |

### AMERICAN UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION

In its Memorandum Opinion, the Court recognized that there is "simply no evidence in the record to suggest that [Tony] Newman did not reasonably and in good faith believe that Plaintiff had committed the various infractions of which he was accused, and that discipline – including termination – was warranted based on the University's progressive discipline policy." Memorandum Opinion ("Mem. Op.") at 42. The Court nonetheless denied the University's motion for summary judgment on Plaintiff's termination claim without a hearing on the ground that the Court could not conclude "that Mr. Newman was 'insulated' from [Kevin] Wyatt's influence." Id. at 43-44. The University respectfully submits that reconsideration is warranted because the Court created a new standard for inferring discriminatory intent and overlooked critical undisputed record evidence with respect to each of the disciplinary decisions at issue. 1/

---

1/    The Court has "broad discretion" under Federal Rule of Civil Procedure 54(b) to hear the University's motion for reconsideration of the Court's interlocutory order, and the Court may

### A. Under Controlling Law, Mr. Wyatt Did Not "Influence" Mr. Newman's Decision to Issue the April 8, 2005 Warning.

Information provided to a decisionmaker by an allegedly biased employee does not taint a disciplinary decision if the decisionmaker received and relied upon "similar" information from a non-biased source or "made an independent assessment" of the conduct that led to the discipline. Holbrook v. Reno, 196 F.3d 255 (D.C. Cir. 1999); Hall v. Giant Food, Inc., 175 F.3d 1074 (D.C. Cir. 1999). In Holbrook, the court concluded that when a biased and a non-biased instructor both reported "similar" concerns about a trainee, the non-biased instructor's report constituted a break "in the chain of causation" between the biased instructor's report and the ensuing adverse action. Holbrook, 196 F.3d at 260. Similarly, Hall concluded that the decisionmaker's "independent assessment" of the plaintiff's conduct broke the causal connection between the plaintiff's suspension and a supervisor's discriminatory remark. Hall, 175 F.3d at 1080. Indeed, even when an allegedly biased employee recommends termination, summary judgment is warranted when a non-biased decisionmaker "independently review[s]" the information on which the recommendation is based and reaches "the same conclusion" as the allegedly biased employee. Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105, 119 (D.D.C. 2004), aff'd, 2004 WL 2348142 (D.C. Cir. Oct. 19, 2004). These decisions reflect the commonsense proposition that unless an allegedly biased employee both "participate[s] in and influence[s]" the challenged employment decision in a manner that gives rise to a reasonable inference of discrimination, that employee's alleged biases are legally irrelevant. See George v. Leavitt, 407

---

grant the motion "as justice requires." See In Defense of Animals v. Nat'l Institutes of Health, 527 F. Supp. 2d 23, 28-29 (D.D.C. 2007). See also, e.g., Burlington Ins. Co. v. Okie Dokie, Inc., 439 F. Supp. 2d 124, 131 (D.D.C. 2006); Moore v. Hartman, 332 F. Supp. 2d 252, 256 (D.D.C. 2004). The University respectfully submits that it has satisfied this standard for the reasons set forth herein.

F.3d 405, 416 (D.C. Cir. 2005) (emphasis added).  See also, e.g., EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 487 (10th Cir. 2006) ("the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action") (emphasis added), cert. dismissed, 127 S. Ct. 1931 (2007).

In this case, the undisputed evidence demonstrates that Mr. Wyatt did not influence Mr. Newman's April 8, 2005 decision to issue a Level II warning to Plaintiff for making unauthorized shuttle stops.  It is undisputed, for example, that Mr. Newman learned of Plaintiff's actions from Tanisha Jagoe, a University Director who regularly rode the University's shuttle buses and who recognized Plaintiff by sight.  Declaration of Tony Newman ("Newman Decl.") ¶ 8 (attached as Exhibit 1 to Defendants' Motion for Summary Judgment) ("Def.'s Ex." 1); Declaration of Tanisha Jagoe ¶¶ 3-5 (Def.'s Ex. 4); Def.'s Ex. 5.  Ms. Jagoe provided an eyewitness account of Plaintiff's unauthorized stops, and she positively identified Plaintiff as the bus driver.  Id.  As the Court noted, nothing in the record suggests that Ms. Jagoe's report was motivated by discriminatory animus, or that Mr. Newman did not legitimately and in good faith rely on Ms. Jagoe's first-hand observations.  Mem. Op. at 12 n.7, 42.

Although the Court concluded that Mr. Wyatt played a "crucial role" in the April 8 warning, Mem. Op. at 43-44, the only record evidence linking Mr. Wyatt to that decision is the statement that Mr. Wyatt "confirmed that Mr. Isse was the relief driver for the bus in question." Newman Decl. ¶ 8 (Def.'s Ex. 1).  That single statement does not support a reasonable inference that Mr. Wyatt influenced Mr. Newman's decision. 2/  Plaintiff's status as the relief driver (i.e.,

---

2/    Only reasonable inferences – those with a "reasonable probability" of being correct – may be drawn in Plaintiff's favor.  See, e.g., Henry v. Guest Servs., Inc., 902 F. Supp. 245, 250 (D.D.C. 1995), aff'd, 98 F.3d 646 (D.C. Cir. 1996) (citing Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993)); Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th

3

the driver who operated the bus during the regular driver's one-hour break, Newman Decl. ¶ 3 (Def.'s Ex. 1)) did not establish that Plaintiff was driving the bus at the time of the unauthorized stops – that information came exclusively from Ms. Jagoe's eyewitness account. Thus, Mr. Newman did not merely receive "similar" information from Mr. Wyatt and an unquestionably unbiased source, Holbrook, 196 F.3d at 260; rather, Ms. Jagoe provided direct evidence of a safety violation, thereby establishing a fatal break "in the chain of causation" that Plaintiff seeks to establish. See id. See also Griffin v. Washington Convention Cntr., 142 F.3d 1308, 1311 (D.C. Cir. 1998).

The record also negates any inference that Mr. Newman actually was influenced by the limited information Mr. Wyatt provided. The April 8 warning referred exclusively to Ms. Jagoe's firsthand account and did not even suggest that Mr. Wyatt's "corroboration" had influenced Mr. Newman's disciplinary decision. Def.'s Ex. 8. Similarly, Mr. Newman relied exclusively on Ms. Jagoe's eyewitness report when he reaffirmed his disciplinary decision after meeting with Plaintiff and reviewing his Grievance Memorandum. Def.'s Ex. 15; Newman Decl. ¶ 13 (Def.'s Ex. 1). Mr. Newman's independent assessment of Plaintiff's conduct thus severs any causal connection between the April 8 warning and Mr. Wyatt's alleged animus. Hall, 175 F.3d at 1080; Griffin, 142 F.3d at 1311 (a decision that is "independent of" the subordinate's alleged bias is irrelevant). Cf. Brewer v. Bd. of Trustees of the Univ. of Illinois, 479 F.3d 908, 917-920 (7th Cir. 2007) (an allegedly biased employee's "minimal" or "slight" influence over an employment decision is insufficient to defeat summary judgment), cert. denied, 128 S. Ct. 357 (2007).

Undisputed evidence also demonstrates that Mr. Wyatt did not influence

---

Cir. 1987) (affirming dismissal where plaintiff failed to raise an inference of retaliation that had "reasonable probability" and was not merely "a remote possibility").

4

Mr. Newman's conclusion that a Level II warning was warranted.  Plaintiff admits that "[s]ince becoming Director of Transportation Services, Mr. Newman has regularly treated shuttle drivers' safety violations as Level II violations."  Defendants' Statement of Material Facts ("Def.'s Stmt.") ¶ 8; Plaintiff's Reply Statement ("Pl.'s Reply Stmt.") ¶ 8; Newman Decl. ¶ 8 (Def.'s Ex. 1); Mem. Op. at 13 n.9.  Plaintiff also does not dispute that making unauthorized shuttle stops constitutes a safety violation.  Finally, it is undisputed that Mr. Newman instructed Mr. Wyatt to draft the April 8 warning, independently consulted with the University's Human Resources Department before advising Mr. Wyatt to issue the warning, and affirmed the warning after meeting with Plaintiff to receive his version of events.  Newman Decl. ¶¶ 9, 13 (Def.'s Ex. 1); Def.'s Ex. 15.  On this record, this Circuit's "subordinate bias" cases compel the conclusion that Mr. Wyatt did not influence the April 8 disciplinary decision.

> **B.    Mr. Wyatt's Role in the July 25, 2005 Warning Was Limited to Providing Indisputably Accurate Information, Which Cannot Give Rise to an Inference of Discrimination.**

Nor is there any evidence that Mr. Wyatt influenced the second disciplinary decision.  It is well established that " '[a]n employer cannot escape responsibility for discrimination when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of [a protected class].' "  George, 407 F.3d at 416 (quoting Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1323 (8th Cir. 1994)).  Conversely, when an allegedly biased employee merely communicates indisputably accurate and non-misleading information to the decisionmaker, the challenged employment action cannot have been "influenced" in any manner that might be probative of discriminatory animus.  BCI Coca-Cola Bottling Co., 450 F.3d at 487 (only "the biased subordinate's discriminatory reports, recommendation, or other actions" can create an inference of discrimination) (emphasis added).

The July 25, 2005 Level II written warning falls squarely within this rule because Plaintiff does not dispute the accuracy of the "corroborating" information that Mr. Wyatt supplied to Mr. Newman.

The only record evidence linking Mr. Wyatt to the July 25 decision is his "report[] to Mr. Newman that Plaintiff was the scheduled driver" for the bus that William Suter observed violating traffic rules on July 11, 2005. Mem. Op. at 43. This report cannot have improperly influenced Mr. Newman for the simple reason that Plaintiff himself has repeatedly and unequivocally admitted that he was the scheduled driver. Def.'s Ex. 14, at 2; Deposition of Mohammed Isse ("Isse Dep.") at 126-128 (Def.'s Ex. 26); Mem. Op. at 15. The information that Mr. Wyatt provided therefore was indisputably accurate. 3/ To allow Plaintiff to withstand summary judgment based on "corroboration" of an undisputed fact is to let essentially every plaintiff get to trial in a Title VII case if a non-biased decisionmaker receives any information – even unquestionably accurate information – from an allegedly biased subordinate.

To be sure, Plaintiff speculates that someone else must have been driving the bus at the precise time when Mr. Suter observed its driver's reckless actions. Isse Dep. at 126-128 (Def.'s Ex. 26). Mr. Newman legitimately rejected that wholly implausible assertion. Newman Decl. ¶ 10 (Def.'s Ex. 1); Mem. Op. at 42. See Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("the issue is not 'the correctness or desirability of the reasons offered . . . but whether the employer honestly believes in the reasons it offers'" (quoting McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)). Moreover, there is no evidence that Mr. Wyatt influenced that decision: the factual information

---

3/   Mr. Wyatt's corroboration that Plaintiff purchased gas for bus #160 likewise was completely accurate. Id.

6

Mr. Wyatt provided did not even purport to suggest that Plaintiff was driving the bus at that precise moment, but rather merely indicated, as Plaintiff subsequently confirmed, that Plaintiff was the scheduled driver for that bus.

Finally, the record evidence again demonstrates conclusively that Mr. Wyatt did not influence Mr. Newman's conclusion that a Level II written warning was warranted. Plaintiff does not dispute that turning without signaling and running a stop sign constitute safety violations, and he admits that Mr. Newman treated shuttle drivers' safety violations as Level II violations. Def.'s Stmt. ¶ 8; Pl.'s Reply Stmt. ¶ 8; Mem. Op. at 13 n.9. Similarly, it also is undisputed that Mr. Newman consulted with the University's Human Resources Department concerning his decision to discipline Plaintiff, instructed Mr. Wyatt to issue the Level II warning, and, after reviewing Plaintiff's Grievance Memorandum and meeting with Plaintiff to receive his version of events, concluded that the warning should not be rescinded. Def.'s Ex. 14; Newman Decl. ¶¶ 10, 12-13 (Def.'s Ex. 1). Plaintiff has not adduced, and the record does not contain, any evidence that Mr. Wyatt influenced these actions.

    **C. Mr. Wyatt Did Not "Influence" Mr. Newman's Termination Decision.**

In its Memorandum Opinion, the Court concluded that "Mr. Newman based his decision to terminate Plaintiff following the September 15, 2005 incident on a report from an outside Director, Mr. Wyatt's report that Plaintiff denied taking Grant Road, and the corroboration that Mr. Newman received from Ms. Karmiol that Plaintiff had taken a left turn from Grant Road." Mem. Op. at 42. The Court further concluded that, notwithstanding the absence of any evidence that Mr. Newman "did not reasonably and in good faith believe that Plaintiff" had deviated from the approved route, Plaintiff was not precluded from establishing pretext because Mr. Wyatt's

7

report constituted "key corroboration" on which the termination decision was partly based. Id. at 43-44. The University respectfully submits, however, that there is no record evidence that Mr. Newman actually based his termination decision on the information provided by Mr. Wyatt.

Rather, the record evidence establishes that Mr. Newman concluded that Plaintiff's employment should be terminated "[b]ased on Ms. Jagoe's report and Mr. Isse's prior disciplinary record." Newman Decl. ¶ 16 (Def.'s Ex. 1). Moreover, after Mr. Newman contacted the University's Human Resources Department concerning his decision to discharge Plaintiff, Grace Karmiol of the University's Human Resources Department advised Mr. Newman that one of her staff members, Brenda Harner, had reported that she could corroborate Ms. Jagoe's complaint. Id. ¶ 16. It was only after speaking with Ms. Karmiol that Mr. Newman instructed Mr. Wyatt to terminate Plaintiff's employment. Id. There is no record evidence that Mr. Newman's decision also was based on Mr. Wyatt's report.

The Court apparently reached a contrary conclusion because the termination memorandum and Mr. Newman's declaration referred to a September 15, 2005 conversation between Plaintiff and Mr. Wyatt, in which Plaintiff denied that he had "deviated from the specific route to and from the Metro station or any other route." Def.'s Ex. 17. See Newman Decl. ¶ 15 (Def.'s Ex. 1). Specifically, the Court concluded that a "genuine factual dispute" existed because, "[s]ignificantly, Plaintiff altogether denies speaking to Mr. Wyatt on September 15, 2005." Mem. Op. at 21 (citing Pl.'s Ex. 4 (Isse Aff.) ¶ 13)). But Plaintiff admitted at his deposition that he spoke with Mr. Wyatt on September 15, 2005, and that he denied deviating from the route during that conversation. Isse Dep. at 135:7-136:1 (Def.'s Ex. 26). See also Plaintiff's Appeal of Termination, at 2 (Def.'s Ex. 21) (admitting that Plaintiff spoke with Mr. Wyatt about the route on September 15, 2005). The Court should have disregarded Plaintiff's averment contradicting his

8

sworn deposition testimony.  See, e.g., Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 8 (D.D.C. 2004) ("a party's affidavit which contradicts [his or her] own prior deposition testimony should be disregarded") (citation and quotation marks omitted).  Moreover, Plaintiff's deposition testimony establishes that Mr. Wyatt accurately reported the substance of his September 15, 2005 conversation with Plaintiff (that Plaintiff "had denied taking Grant Road or otherwise deviating from the approved routes," Newman Decl. ¶ 15 (Def.'s Ex. 1)).  Mr. Wyatt's report therefore was wholly insufficient to create a reasonable inference of pretext.

In short, the record simply does not support a reasonable inference that Mr. Newman based his termination decision on Plaintiff's denial of his safety violation as opposed to the safety violation itself, and Mr. Wyatt therefore did not "influence" the termination decision by reporting Plaintiff's denial.  In any event, Mr. Wyatt's report of accurate factual information in response to Mr. Newman's request could not be deemed "evidence of a subordinate's bias." Griffin, 142 F.3d at 1311-1312.

The only other basis for the Court's conclusion that Mr. Wyatt's alleged bias is relevant to the termination decision are the averments by Mr. Newman and Mr. Wyatt that they "agreed that Mr. Isse's employment should be terminated."  Mem Op. at 44; Newman Decl. ¶ 15 (Def.'s Ex. 1); Declaration of Kevin Wyatt ¶ 16 (Def.'s Ex. 3).  Of course, the fact that two people agree on a termination decision does not establish that one person influenced the other.  See Gustave-Schmidt, 360 F. Supp. 2d at 119 (no inference of discrimination where decisionmaker "independently . . . arrived at the same conclusion" as allegedly biased supervisor).  As a result, the question is whether the record contains any non-speculative evidence suggesting that Mr. Wyatt influenced Mr. Newman's decision to terminate Plaintiff's employment.  It does not. To the contrary, the record evidence conclusively demonstrates that Mr. Newman made the

9

termination decision (and, as noted, the prior disciplinary decisions, see pp. 3-7, supra) independent of Mr. Wyatt's views, and that Mr. Newman's decision was not affected by the fact that Mr. Wyatt "agreed" with it.  See Newman Decl. ¶ 16 (describing Mr. Newman's termination-related communications with his supervisor and the University's Human Resources Department; the additional eyewitness account of Plaintiff's September 15, 2005 safety violation; and his ensuing decision to "instruct[] Mr. Wyatt to terminate Mr. Isse's employment").

## CONCLUSION

The University respectfully submits that the undisputed record evidence demonstrates that Mr. Newman made the decision to terminate Plaintiff "on an independent and legally permissible basis" untainted by any alleged ill-motives of Mr. Wyatt.  Griffin, 102 F.3d at 1311 (quoting Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir. 1997)).  To impute Mr. Wyatt's alleged animus to the University because he "agreed" with the termination decision (as did both the University's Human Resources Office and Staff Personnel Review Board) and "corroborated" information that was also received from independent and undeniably unbiased sources (and from Plaintiff himself with respect to the July 25, 2005 warning) creates a new standard for inferring discriminatory intent that has no basis in this Circuit's "subordinate bias" precedents or summary judgment standards.

For all of the foregoing reasons, the University respectfully requests that the Court reconsider its February 25, 2008 Order in relevant part and enter summary judgment for the University on Plaintiff's termination claim.

                                              Respectfully submitted,

                                                 /s/ Hisham Khalid_____
                                              Hisham R.O. Khalid, Esq. (D.C. Bar # 445494)
                                              Associate General Counsel
                                              American University
                                              4400 Massachusetts Avenue, N.W.
                                              Washington, D.C. 20016-2724
                                              Tel. (202) 885-3285
                                              Fax (202) 885-3273

                                              Attorney for Defendants

CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of March, 2008, a true and correct copy of the foregoing Motion for Reconsideration was mailed first class to:

Mohammed Isse
4939 Carriage Park Road
Fairfax, VA 22032

                                  /s/ Hisham Khalid
                                  Hisham R.O. Khalid