UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED ISSE,

    Plaintiff,

     v.

AMERICAN UNIVERSITY, *et al.*,

    Defendants.

Civil Action No. 06-1422 (CKK)

**MEMORANDUM OPINION**
(April 14, 2008)

Currently pending before the Court is Defendant American University's [23] Motion for Partial Reconsideration of the Court's February 25, 2008 Order granting-in-part and denying-in-part the University's Motion for Summary Judgment. *See Isse v. Am. Univ.*, --- F. Supp. 2d ---, 2008 WL 482356 (D.D.C. Feb. 25, 2008). *Pro se* Plaintiff, Mohammed Isse, brought this action against his former employer, Defendant American University ("Defendant" or the "University"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that the University unlawfully terminated his employment as a shuttle bus driver because of his Muslim religion and Somalian national origin. The Court's February 25, 2008 Memorandum Opinion and Order dismissed Plaintiff's individual claims against his immediate supervisor at the University, Kevin Wyatt, clarified that Plaintiff had abandoned his retaliation claim, and determined that Plaintiff could not pursue his allegations that Defendant failed to reasonably accommodate his religious observance as a separate claim. *Id.* at *1. The Court concluded, however, that genuine issues of material fact precluded summary judgment in favor of Defendant on Plaintiff's unlawful termination claim. *Id.*

Defendant seeks the Court to reconsider its partial denial of summary judgment, arguing that the Court "created a new standard for inferring discriminatory intent and overlooked critical undisputed record evidence with respect to each of the disciplinary decisions at issue." Def.'s Mot. at 1. The Court has thoroughly considered Defendant's Motion for Partial Reconsideration, as well as the relevant statutes and case law, and the entire record herein, and shall DENY [23] Defendant's Motion.

## I: BACKGROUND

The Court's February 25, 2008 Memorandum Opinion contains a thorough discussion of Plaintiff's allegations and the factual record in this case. *See generally Isse*, 2008 WL 482356. The Court therefore repeats herein only the minimal factual background necessary to address Defendant's Motion for Partial Reconsideration. Plaintiff, Mohammed Isse, is a practicing Muslim and a native of Somalia, and worked as a full-time shuttle bus driver in the University's Transportation Services Department from approximately 1990 until his termination on September 16, 2005. *Id.* at *2. At the time of Plaintiff's termination, his direct supervisor was Kevin Wyatt, the University's Shuttle Operations Coordinator. *Id.* In turn, Mr. Wyatt reported to Anthony Newman, the University's Director of Risk Management and Transportation Services. *Id.* The crux of the allegations in Plaintiff's Complaint regarding religious and national origin discrimination are that Mr. Wyatt (along with Mr. Newman's predecessor, Kevin Leathers) refused to accommodate Plaintiff's requests to schedule his lunch breaks on Fridays so that he could attend Muslim prayer sessions, and made anti-Muslim/anti-Somalian comments to Plaintiff on a number of occasions. *Id.* at *3-5. The Court's February 28, 2005 Memorandum Opinion concluded that, while Mr. Wyatt denied all such allegations, genuine issues of material fact exist

regarding those allegations.  *Id.*

Plaintiff's employment with the University was terminated in September 2005, following a series of complaints regarding Plaintiff's driving, which led to two disciplinary warnings.  *Id.* at *5.  The first disciplinary warning involved Plaintiff allegedly allowing passengers to disembark while his shuttle bus was stopped at traffic lights where there were no designated shuttle stops, in violation of University policy.  *Id.* at *6.  The second disciplinary warning involved Plaintiff allegedly making a turn without using a turn signal and running a stop sign.  *Id.* at *7.  The final incident, which led to Plaintiff's termination, involved Plaintiff allegedly deviating from an approved shuttle route, in violation of University policy, by making a left turn onto Wisconsin Avenue from Grant Road rather than Albemarle Street while returning to the University's main campus from the Tenleytown Metro stop.  *Id.* at *8-9.   The Court's February 25, 2008 Memorandum Opinion contains detailed discussions of the allegations and factual evidence regarding each incident.  *See id.* at *5-11.  In sum, however, "Plaintiff denies being involved in the incidents for which he received the two disciplinary warnings, and disputes key facts regarding the third incident."  *Id.* at *5.  With respect to the first incident, Plaintiff denies driving the bus in question and specifically denies letting passengers off at unauthorized stops.  *Id.* at *6. With respect to the second, Plaintiff admits driving the bus in question, but maintains that he was not driving it at the time that it was observed violating traffic rules.  *Id.* at *7.  Finally, with respect to the third incident, Plaintiff admits taking a left turn onto Wisconsin Avenue from Grant Road, rather than Albemarle Street, but denies being aware that doing so constituted a deviation from the approved route.  *Id.* at *9.

Based on the factual disputes surrounding each incident, the Court's February 28, 2005

Memorandum Opinion rejected Defendant's assertion that a reasonable juror would conclude that Plaintiff committed the infractions for which he was disciplined.  *Id.* at *20.  The Court then considered Defendant's argument that these factual disputes were immaterial because the record established that Mr. Newman reasonably and in good faith believed that Plaintiff had committed the infractions.  *Id.* at *20 (citing *Fishbach  v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982)).  The Court accepted Defendant's argument as to Mr. Newman, noting that Plaintiff did not allege any religious or national origin-based animus on Mr. Newman's part (or on the part of the University officials who affirmed Mr. Newman's decision to terminate Plaintiff) and that no evidence of such animus existed.  *Id.* at *21.

The Court "nevertheless conclude[d] that Mr. Newman's reasonable and good faith belief [did] not preclude Plaintiff from establishing that Defendant's proffered reason for terminating [him] is pretextual, because of the crucial role that Mr. Wyatt played in the decisions to discipline, and ultimately terminate, Plaintiff."  *Id.*  The Court noted that a factual dispute existed as to Mr. Wyatt's alleged religious or national-origin based animus, and further noted the D.C. Circuit's holding that "that evidence of a subordinates's bias is relevant where . . . the ultimate decisionmaker is not insulated from the subordinate's influence."  *Id.* (quoting *Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1310 (D.C. Cir. 1998); *cf. Holbrook v. Reno*, 196 F.3d 255, 160-61 (D.C. Cir. 1999) (evidence of supervisor's discriminatory remarks not evidence of discrimination where record did not indicate that supervisor had input in disciplinary decision); *Hall v. Giant Food*, 174 F.3d 1074, 1079-80 (D.C. Cir. 1999) (evidence of supervisor's discriminatory remarks not probative of discrimination where the decisionmaker

4

"made an independent assessment" of the plaintiff's conduct)). The Court found itself unable to determine, based on the record before it, that Mr. Newman was "insulated" from Mr. Wyatt's influence. *Id.* at *22.

Defendant's Motion for Partial Reconsideration challenges this conclusion, asserting that in each instance, Mr. Wyatt did not "participate in and influence" Mr. Newman's disciplinary decisions, but rather Mr. Newman "made an independent assessment" of Plaintiff's conduct that broke the causal connection between Mr. Wyatt's input and the disciplinary actions. *See generally* Def.'s Mot. As a result, Defendant argues, the Court erred in denying Defendant's motion for summary judgment as to Plaintiff's unlawful termination claim.

## II: LEGAL STANDARDS

Defendant does not extensively discuss the legal grounds for its Motion, including only a brief footnote stating that the Court has "'broad discretion' under Federal Rule of Civil Procedure 54(b) to hear the University's motion for reconsideration of the Court's interlocutory order." Def.'s Mot. at 1 n.1. Defendant's reliance on Rule 54(b) appears to be correct because the Court's February 25, 2008 Memorandum Opinion and accompanying Order only dismissed Plaintiff's claims as to Mr. Wyatt, and thus constituted an interlocutory–rather than final–decision under Rule 54(b). *See* Fed. R. Civ. P. 54(b); *Larue v. United States*, Civ. A. No. 06-61 (CKK), 2007 WL 2071672, at *1 (D.D.C. July 13, 2007) ("without express direction for the entry of judgment on particular claims under [Rule 54(b)], court action which terminates fewer than all claims in a case is considered an interlocutory rather than a *final* decision and subject to revision at any time . . . .") (emphasis in original) (citing *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C. 2003); *Hill v. Henderson*, 195 F.3d 671, 672 (D.C. Cir. 1999)).

5

The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b): "Unlike Rule 60(b) which contains a reasonableness provision, Rule 54(b) allows a court to reconsider its interlocutory decisions 'at any time' prior to a final judgment." *Lewis*, 290 F. Supp. 2d at 3 (quoting Rule 54(b)). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id. See also Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. *See Singh,* 383 F. Supp. 2d at 101. The party seeking reconsideration bears the burden of proving that some harm would accompany a denial of the motion to reconsider; "[i]n order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell*, 355 F. Supp. 2d at 540.

*Cobell* also suggests that even if justice does not "require" reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion: "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id.* However, the efficient administration of justice requires that a court at the very

least have good reason to reconsider an issue which has already been litigated by the parties. "The district court's discretion to reconsider a non-final ruling is [] limited by the law of the case doctrine and 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Singh*, 383 F. Supp. 2d at 101 (quoting *In re Ski Train Fire in Kaprun, Austria, on November 11, 2004*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004)). Thus, if the court chooses to reconsider a motion even if justice does not so require, there must be a "good reason" underlying the parties' re-addressing an already decided issue.

### III: DISCUSSION

Despite Defendant's assertion that "the Court created a new standard for inferring discriminatory intent," Def.'s Mot. at 1, there is no real dispute as to the standard for determining whether Mr. Wyatt's alleged bias is relevant in assessing Defendant's good fath belief in the non-discriminatory reasons it proffered for Plaintiff's termination. As Defendant notes in its Motion for Partial Reconsideration, the alleged bias of a subordinate–in this case, Mr. Wyatt–may be relevant where the subordinate "participate[s] in and influence[s]" the employment decision at issue. *Id.* at 2. In contrast, evidence of a subordinates's bias is not relevant if the ultimate decisionmaker is "insulated from the subordinate's influence," *Griffin*, 142 F.3d at 1310, or the ultimate decisionmaker makes an "independent assessment" of the conduct at issue and determines that discipline is warranted, *Hall*, 175 F.3d at 1080. Similarly, a subordinate's alleged bias is not relevant where "the record contains no evidence" that the subordinate participated in the decision at issue. *Holbrook*, 196 F.3d at 260. Applying this standard to the instant case, the Court continues to believe that genuine questions of material fact exist regarding

7

the role Mr. Wyatt played in Mr. Newman's decisions to issue disciplinary warnings to Plaintiff and to ultimately terminate him, which cannot be resolved on a motion for summary judgment.

According to Defendant, "the undisputed evidence demonstrates that Mr. Wyatt did not influence Mr. Newman's [] decision to issue [the first disciplinary warning]" because Mr. Newman based his decision on University Director Tanisha Jagoe's "eyewitness account of Plaintiff's unauthorized stops" and "positive[] identifi[cation of] Plaintiff as the bus driver." Def.'s Mot. at 3. The record is, in fact, clear that Mr. Newman received the report of Plaintiff's alleged unauthorized stops from Ms. Jagoe and that Ms. Jagoe identified Plaintiff as the driver. *See Isse*, 2008 WL 482356, at *6. However, Mr. Newman's Declaration avers that "shortly after receiving [Ms. Jagoe's] complaint," Mr. Newman "spoke with Kevin Wyatt" who "confirmed that [Plaintiff] was the relief driver" for the route in question. *See* Def.'s Ex. 1 (Newman Decl.) ¶ 8. According to Mr. Newman, he then instructed Mr. Wyatt to draft a disciplinary memorandum for Plaintiff and consulted with the University Human Resources department, before instructing Mr. Wyatt to issue the disciplinary memorandum. *Id.* ¶ 9.

While Defendant asserts that Mr. Newman identified Plaintiff as driving the bus in question based on Ms. Jagoe's eyewitness report rather than Mr. Wyatt's confirmation that Plaintiff was the scheduled driver, Def.'s Mot. at 3-4, Mr. Newman's Declaration does not provide that information on its face. *See* Newman Decl. ¶¶ 8-9. Defendant's inference may be a reasonable one, but the timeline set forth in Mr. Newman's Declaration raises an at least equally reasonable inference that Mr. Wyatt's additional information "influenced" Mr. Newman's decision to issue a disciplinary warning. As such, the Court cannot determine that Mr. Newman's decision was "insulated" from Mr. Wyatt influence or that Mr. Wyatt did not

8

"participate in and influence" Mr. Newman's decision. Nor can the Court resolve the clear

factual dispute between Ms. Jagoe's claim that Plaintiff was driving the bus in question and

Plaintiff's assertion that he never dropped passengers off at unauthorized stops and was not

driving the bus Ms. Jagoe was riding. *Isse*, 2007 WL 482356, at *6. Significantly, while Mr.

Wyatt states that he "checked [his] records, [and] confirmed that [Plaintiff] was the relief driver"

for the bus in question, Defendant did not proffer those records in support its Motion for

Summary Judgment. As the record is thus devoid of objective evidence demonstrating that

Plaintiff was driving the bus in question, resolving the factual dispute in that respect depends

entirely on the conflicting testimony of Ms. Jagoe, Mr. Wyatt, and Plaintiff, *i.e.*, upon a

credibility determination that the Court is precluded from making on summary judgment. *See*

*Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (On a motion for summary judgment, the

Court must "eschew making credibility determinations or weighing the evidence.").

     Defendant next argues that there is no evidence that Mr. Wyatt influenced the second

disciplinary decision because Mr. Wyatt simply confirmed to Mr. Newman that Plaintiff was

scheduled to drive the #160 bus on the day in question, a fact that Plaintiff does not dispute.

Def.'s Mot. at 5-6. Again, however, Mr. Newman's Declaration permits a reasonable inference

that he relied, at least in part, on the information he received from Mr. Wyatt in making his

disciplinary decision. Specifically, Mr. Newman states that upon receiving a complaint from

University Director William Suter, he "reported the incident to Kevin Wyatt and asked him to

look into the matter and find out who was assigned to drive bus #160. Mr. Wyatt reported back

to me that [Plaintiff] was assigned to drive bus #160. Mr. Wyatt also secured Citgo gas receipt

signed by Mr. Isse showing that Mr. Isse had purchased gas that morning for the bus." Def.'s Ex.

1 (Newman Decl.) ¶ 10.  Mr. Newman's Declaration therefore does not determinatively establish

the degree to which he relied on Mr. Wyatt in deciding to discipline Plaintiff.  Moreover, Mr.

Suter did not specifically identify Plaintiff as driving the #160 bus at the time in question and

Plaintiff denies doing so.  Again, Defendant has not proffered objective evidence that Plaintiff

was driving the #160 bus at the time in question,[1] and as a result, a factual dispute exists that will

ultimately need to be resolved by the trier of fact based on credibility determinations.

Finally, Defendant asserts that "there is no record evidence that Mr. Newman actually

based his [decision to terminate Plaintiff] on the information provided by Mr. Wyatt."  Def.'s

Mot. at 8.  As to this assertion, Defendant first argues that the Court erroneously determined that

Mr. Newman was influenced by Mr. Wyatt because both the termination memorandum and Mr.

Newman's declaration referred to a September 15, 2005 conversation between Plaintiff and Mr.

Wyatt in which Plaintiff denied deviating from the approved route.  *Id.*  As Defendant notes, the

Court's September 25, 2008 Memorandum Opinion found that a factual dispute existed regarding

that conversation because "Plaintiff altogether denies speaking to Mr. Wyatt on September 15,

2005."  *Id.*; *Isse*, 2008 WL 482356, at *10 (citing Pl.'s Ex. 4 (Isse Aff.) ¶ 13).  Defendant's

_____

[1] As the Court noted in its February 28, 2005 Memorandum Opinion, the Citgo receipt described in Mr. Newman's Declaration does not identify the time that the gas was purchased. *Isse*, 2008 WL 482356, at *7.  This is significant because Mr. Suter reported seeing the bus in question enter the University's main campus without using a turn signal and then run a stop sign "just before 7AM" on July 11, 2005.  Def.'s Ex. 10 (7/19/05 e-mail from W. Suter to A. Newman).  For his part, Plaintiff asserts that he purchased gas for the bus sometime after 6:10 a.m. on July 11, 2005, returned to the University's main campus at approximately 6:40 a.m., parked and left the bus, returned to the bus and drove it out of (rather than into) the University's main campus at 7:00 a.m.  *Isse*, 2008 WL 482356, at *7.  According to Plaintiff, someone else was driving the bus when Mr. Suter observed it entering the University campus just before 7 a.m. *Id.*  While the Citgo receipt confirms that Plaintiff purchased gas for the bus on July 11, 2005, it does not place Plaintiff in the bus when Mr. Suter observed it violating traffic rules.

10

Motion for Partial Reconsideration asserts that Plaintiff's denial must be disregarded because Plaintiff previously admitted–in his written appeal of his termination–speaking to Mr. Wyatt on September 15, 2005 in his written appeal of his termination.  Def.'s Mot. at 8-9 (citing Def.'s Ex. 21 (9/26/05 Appeal Mem.).  Significantly, Defendant did not specifically identify this admission in support of its Motion for Summary Judgment, and as the D.C. Circuit has emphasized, the local rules regarding summary judgment "place[] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).  Nevertheless, Defendant is correct that the Court must disregard Plaintiff's assertion that he did not speak with Mr. Wyatt on September 15, 2005 because that assertion is contradicted by Plaintiff's previous admission in his written appeal. *Cf.*, *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 8 (D.D.C. 2004) ("a party's affidavit which contradicts [his or her] own prior deposition testimony should be disregarded") (citation and quotation marks omitted).

Accepting, then, that Plaintiff and Mr. Wyatt spoke on September 15, 2005, a factual question still remains as to whether Plaintiff simply denied deviating from an approved route on that date, or actually denied taking Grant Road on that date. *See* Def.'s Ex. 3 (Wyatt Decl.) ¶ 13 (stating that Plaintiff denied "taking Grant Road or otherwise deviating from the approved routes."); Def.'s Ex. 26a (2/27/07 Isse Dep.) at 135:7-137:20 (Plaintiff testified that he told Mr. Wyatt he did not deviate from the approved route because he did not know that Grant Road was not approved).  Far more significantly, a factual dispute remains as to whether Plaintiff was

11

actually aware, prior to September 15, 2005, "that the only approved Metro shuttle route ran via Albemarle Street rather than Grant Road." *Isse*, 2008 WL 482356, at *9. These factual disputes are relevant insofar as Mr. Newman's Declaration and Mr. Wyatt's termination memorandum indicate that Plaintiff made a misrepresentation stating that he did not deviate from an approved route. *See* Def.'s Ex. 1 (Newman Decl.) ¶ 16; Def.'s Ex. 17 (9/16/05 Term. Letter). As noted above, Plaintiff continues to maintain that he was not aware that Grant Road was prohibited and that, as a result, he did not knowingly deviate from an approved route by taking Grant Road rather than Albemarle Street.

In any event, Defendant argues that "the record evidence establishes that Mr. Newman concluded that Plaintiff's employment should be terminated '[b]ased on Ms. Jagoe's report [of the incident in question] and [Plaintiff's] prior disciplinary record,'" rather than based on any discussion with Mr. Wyatt. Def.'s Mot. at 8 (quoting Def.'s Ex. 1 (Newman Decl.) ¶ 16)). As Defendant admits, however, both Mr. Newman and Mr. Wyatt's Declarations describe Mr. Wyatt's report to Mr. Newman of his September 15, 2005 conversation with Plaintiff. *Id.* at 9; Def.'s Ex. 1 (Newman Decl.) ¶ 15; Def.'s Ex. 3 (Wyatt Decl.) ¶ 16. Further, both Mr. Newman and Mr. Wyatt aver that they "agreed" that Plaintiff's employment should be terminated, *id.* and Mr. Wyatt's Declaration further states that he and Mr. Newman "discussed the matter," Def.'s Ex. 3 (Wyatt Decl.) ¶ 16. Defendant is correct that "the fact that two people agree on a termination decision does not establish that one person influenced the other." Def.'s Mot. at 9. Here, though, the record is susceptible of two equally reasonable interpretations: first, that Mr. Newman's decision to terminate Plaintiff was based, at least in part, on his discussion with Mr. Wyatt, and second, that it was not based on that discussion. Accordingly, the Court cannot

determine based on the record before it that Mr. Newman's decision was "insulated" from Mr. Wyatt's influence.

Ultimately, the trier of fact in this case will be required to resolve two significant questions. First, whether Plaintiff's disputed allegations that Mr. Wyatt refused Plaintiff's requests to attend Muslim prayer sessions during his lunch breaks on Fridays and made various anti-Muslim and anti-Somalian comments demonstrate religious or national-origin based animus. If the jury finds no religious or national origin-based bias, Mr. Wyatt's role in Mr. Newman's decisions becomes irrelevant because Plaintiff does not allege any bias on Mr. Newman's part. If, however, the trier of fact finds religious or national origin-based bias on Mr. Wyatt's part, the next question will be whether Mr. Newman's disciplinary and termination decisions were "insulated" from Mr. Wyatt's influence.   On the record before the Court at this time, numerous factual disputes abound as to each question.   Moreover, because the evidence relevant to each question consists primarily of testimony, resolving the key questions in this case thus requires the type of credibility determinations that the Court must eschew on a motion for summary judgment.   The Court thus continues to believe that genuine issues of material fact preclude summary judgment on Plaintiff's unlawful termination claim, and shall therefore deny Defendant's Motion for Partial Reconsideration.   The Court has not set out a new standard for inferring discriminatory intent or imposed a greater requirement of corroboration.   Rather, the Court has applied the correct standard, and has found that the factual record does not support the outcome that Defendant seeks.

## IV: CONCLUSION

For the reasons set forth above, the Court shall DENY [23] Defendant's Motion for

Partial Reconsideration.

Date:   April 14, 2008

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge